# STATE OF MICHIGAN

# COURT OF APPEALS

DETROIT LAND DEVELOPMENT COMPANY, INC,

UNPUBLISHED
August 16, 2018

Plaintiff-Appellant,

v

No. 338823
Wayne Circuit Court
LC No. 17-003316-CH

WAYNE COUNTY TREASURER,

Defendant-Appellee.

Before: SWARTZLE, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

Plaintiff, Detroit Land Development Company, Inc. (DLD), appeals by right the trial court order granting summary disposition under MCR 2.116(I)(2) to defendant, Wayne County Treasurer. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

In November 2011, DLD acquired the property commonly known as 5852 W. Fort Street, Detroit, Michigan. Although the tax ID number listed on the quit claim deed was 16000310-1, that tax ID number was retired and the property was split into two new tax ID numbers: 16000311, with an address of 5852 W Fort Street, and 16000310, with an address of 5872 W. Fort Street.[1]

The Treasurer filed a petition for foreclosure on the 5852 W. Fort Street address, and a judgment of foreclosure was entered by the trial court on March 28, 2013. On August 29, 2013, the Michigan Land Bank Fast Track Authority purchased the property from the Treasurer. There is no evidence on the record that DLD contested the foreclosure or otherwise appealed the judgment of foreclosure.

---

[1] According to the record before us, it is not clear when the City of Detroit retired the tax ID number listed on DLD's November 2011 quit claim deed. Based on an affidavit from a city appraiser, however, it is clear that the property was split starting with the 2009 tax year.

Subsequently, the Treasurer filed a petition for foreclosure on the 5872 W. Fort Street property, and a judgment of foreclosure was entered by the trial court on March 28, 2014. On September 3, 2014, the Michigan Land Bank Fast Track Authority purchased the property from the Wayne County Treasurer. DLD apparently challenged the foreclosure proceedings with regard to this property, but its case was dismissed without prejudice after the trial court found that DLD's due process rights were not violated and that the foreclosure proceedings and judgment were valid.

Relevant to this appeal, on February 21, 2017, DLD filed a complaint against the Treasurer, seeking to quiet title for both Fort Street properties. DLD moved for summary disposition under MCR 2.116(C)(9) and MCR 2.116(C)(10), asserting that the properties were prematurely foreclosed, that the County violated due process by failing to take reasonable additional steps after its mailed notice was returned undeliverable, and its due process was violated because it did not receive constitutionally adequate notice that the County was dividing, taking, and selling its property.

In response, the Treasurer argued that DLD's claim should be dismissed for a number of reasons, including that it had provided constitutionally adequate notice of the foreclosure proceeding so DLD's challenge was nothing more than an improper collateral attack on the 2013 and 2014 judgments of foreclosure. In support of its arguments, the Treasurer provided documentary evidence indicating that it had mailed notice of the forfeiture for delinquent taxes and foreclosure proceedings to DLD's record address,[2] that it had published notice in the legal news for three weeks for each property, and that a process server had attempted to personally serve notice. Further, the process server personally visited both Fort Street properties and, upon finding them unoccupied, left notice of the foreclosure proceedings in a conspicuous place on each property, as demonstrated by an affidavit and a photograph of the notice.

After hearing oral argument on DLD's motion, the trial court granted the Treasurer summary disposition for several reasons, including that DLD was not denied due process under *Jones v Flowers*, 547 US 220; 126 S Ct 1708; 164 L Ed 2d 415 (2006), and the entirety of DLD's claim was an improper collateral attack.

## II. APPELLATE JURISDICTION

The Treasurer raises a jurisdictional challenge. It argues that the order granting summary disposition is, in effect, a postjudgment order stemming from the 2013 and 2014 judgments of foreclosure, and so it does not constitute a final order appealable as of right. We disagree.

This Court has jurisdiction of an appeal of right from a final judgment or order, MCR 7.203(A)(1), which is defined in part as "the first judgment or order that disposes of all of the claims and adjudicates the rights and liabilities of all the parties . . . ." MCR 7.202(6)(*i*). Here, the trial court's order granting the Treasurer summary disposition is the first judgment that

---

[2] DLD's lawyer confirmed at oral argument that the address used by the Treasurer was the correct address.

-2-

disposes of all the claims and adjudicates the rights and liabilities of all parties with respect to DLD's 2017 lawsuit. The mere fact that DLD's claim of appeal is, essentially, seeking relief from the judgments entered in two previous cases does not change the nature of the trial court's order in this case. Accordingly, the Treasurer's challenge to our jurisdiction is without merit.

## III. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

The parties dispute whether DLD's claim in the trial court was an improper collateral attack on the judgments of foreclosure that were entered in 2013 and 2014. DLD contends that it is entitled to bring the present lawsuit because the Treasurer did not provide it with constitutionally adequate notice of the foreclosure proceedings. In response, the Treasurer contends that it provided DLD was adequate notice. We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009).

### B. ANALYSIS

Property tax foreclosures are governed by the General Property Tax Act (GPTA), MCL 211.1 *et seq*. MCL 211.78k(7) provides that a party may appeal a judgment of foreclosure within 21 days of its entry. *In re Petition by Wayne Co Treasurer for Foreclosure*, 478 Mich 1, 7; 732 NW2d 458 (2007). In general, "[i]f a property owner does not redeem the property or appeal the judgment of foreclosure within 21 days, then MCL 211.78k(6) deprives the circuit court of jurisdiction to alter the judgment of foreclosure." *Id*. at 8. Rather, a circuit court has jurisdiction to alter a judgment of foreclosure only in limited circumstances involving the denial of due process such as when "the foreclosing entity fails to provide *constitutionally adequate notice*" of the foreclosure proceeding. *Id*. at 10–11. Stated differently, the portion of MCL 211.78k that purports "to limit the circuit court's jurisdiction to modify judgments of foreclosure is unconstitutional and unenforceable as applied to property owners who are denied due process." *Id*. at 11. And "any proceeding under the act conducted without due process is *invalid*." *In re Wayne Co Treasurer*, 265 Mich App 285, 293; 698 NW2d 879 (2005).

In *Sidun v Wayne Co Treasurer*, 481 Mich 503, 509-512; 751 NW2d 453 (2008), our Supreme Court explained that

> Proceedings that seek to take property from its owner must comport with due process. A fundamental requirement of due process in such proceedings is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v Central Hanover Bank & Trust Co*, 339 US 306, 314; 70 S Ct 652; 94 L Ed 865 (1950). Interested parties are "entitled to have the [government] employ such means 'as one desirous of actually informing [them] might reasonably adopt' to notify [them] of the pendency of the proceedings." *Dow v Michigan*, 396 Mich 192; 240 NW2d 450 (1976), quoting *Mullane, supra* at 315. That is, the means employed to notify interested parties must be more than a mere gesture; they must be means that one who actually desires to inform

the interested parties might reasonably employ to accomplish actual notice. *Mullane*, *supra* at 315. However, "[d]ue process does not require that a property owner receive actual notice before the government may take his property." *Jones*, *supra* at 226. In this case, the county treasurer attempted to notify plaintiff of the foreclosure proceedings, but actual notice was not achieved. Thus, the issue is whether the methods employed by the county treasurer were sufficient to satisfy due-process requirements.

A notification method may be reasonable and constitutional if employing the method is "reasonably certain to inform those affected," or, when circumstances do not reasonably permit such notice, if the method employed is not substantially less likely to provide notice than other customary alternative methods. *Mullane*, *supra* at 315. Notably, *Mullane* recognized that the reasonableness of a particular method could vary, depending on what information the government had. That case concerned a New York law that merely required notice by publication to inform beneficiaries of a common trust fund that the fund was subject to judicial settlement. *Id*. at 309-310. The Court held that while notice by publication was constitutionally sufficient with regard to beneficiaries whose interests or addresses were unknown, notice by publication was insufficient for beneficiaries whose names and addresses were known by the government. "Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." *Id*. at 318. Notice by publication was inadequate in the case of known beneficiaries "because under the circumstances it is not reasonably calculated to reach those who could easily be informed by other means at hand." *Id*. at 319.

Moreover, even if a statutory scheme is reasonably calculated to provide notice in the ordinary case, the United States Supreme Court has nevertheless "required the government to consider unique information about an intended recipient. . . ." *Jones*, *supra* at 230. The Court has explained that the " 'notice required will vary with [the] circumstances and conditions.' " *Id*. at 227 (citation omitted). The government's knowledge that its attempt at notice has failed is a " 'circumstance and condition' that varies the 'notice required.' " *Id*. (citations omitted). In such a case, the adequacy of the government's efforts will be evaluated in light of the actions it takes after it learns that its attempt at notice has failed. The Court explained, "[W]hen mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id*. at 225. "What steps are reasonable in response to new information depends upon what the new information reveals." *Id*. at 234. For example, when certified mail is returned as "unclaimed," it means either that the addressee still lives at that address but was not home when the mail was delivered and did not retrieve it, or that the addressee no longer resides at that address. *Id*. Under those circumstances, a reasonable follow-up measure aimed at the first possibility would be to resend the notice by regular mail. *Id*. Reasonable follow-up measures directed at the possibility that the addressee had moved would be to post

-4-

notice on the front door or to send notice addressed to "occupant." *Id*. at 235. Although the government must take reasonable additional steps to notify the owner, it is not required to go so far as to "search[] for [an owner's] new address in the . . . phonebook and other government records such as income tax rolls." *Id*. at 235-236. Ultimately, the Court did not prescribe the form of service that should be adopted in any given case, but simply observed that for purposes of its holding—which found the state's follow-up actions insufficient—it sufficed that additional reasonable steps were available for the state to employ before taking the property. *Id*. at 238.

DLD argues that it was provided with insufficient notice. First, it contends that the notice provided was not reasonably calculated to apprise it of the impending foreclosure because the Treasurer knew that DLD did not actually receive notice. However, although there is evidence that the mailed notice was not received,[3] there is no indication in the record that the Treasurer was aware that the newspaper notice and the notice posted in a conspicuous place on the properties were not seen by DLD. Moreover, actual notice is not required. *Sidun*, 481 Mich at 509.

DLD also contends that the Treasurer took no additional, reasonable steps to notify it about the foreclosure proceedings after the certified mail was returned as undeliverable. The record belies that claim. The Treasurer submitted documentary evidence that, in addition to mailing notice to DLD's record address, it published notice in the Detroit Legal News for three consecutive weeks for each property. A process server also went to each property to personally deliver notice. The server averred that it found the property unoccupied and abandoned, but posted notice in a conspicuous place and took a photograph of the notice. Thus, contrary to DLD's contentions, the Treasurer took additional, reasonable steps to provide it with notice about the foreclosure proceedings.

DLD suggests that attempted personal service, posting notice on the property, and publishing notice in the newspaper is insufficient and references our Supreme Court's opinion in *Sidun*. In *Sidun*, our Supreme Court held that the Wayne County Treasurer's efforts to provide notice of foreclosure proceedings did not satisfy due process. *Id*. at 515. The Court acknowledged that the Treasurer had provided the plaintiff notice via certified mail, published notice in the public-notice section of a community newspaper, and posted notice on the property because the representative was unable to personally meet with the occupant. *Id*. at 507. In other words, the Treasurer took the same steps in *Sidun* that it did in this case. DLD suggests that, as a result, we should reach the same outcome as the *Sidun* Court.

We conclude, however, that the decision in *Sidun* is distinguishable. In that case, the property had two owners. *Id*. at 505. The deed for the property listed both owners, and it listed an address associated with each owner. *Id*. at 505-506. Despite having access to the plaintiff's address, the Treasurer only sent notice to the address listed for the plaintiff's co-owner. *Id*. at

---

[3] The mail log for 5852 W Fort Street indicates that it is "unknown" what happened to the notice. The mail log for 5872 W Fort Street indicates that the mail was "undeliverable as addressed."

515. In reversing, our Supreme Court explained that "[i]f the government provides notice by mail, due process requires it to be mailed to an 'address reasonably calculated to reach the person entitled to notice.' " *Id.* at 514, quoting *Dow*, 396 Mich at 211. And, because the deed listed a separate address for the plaintiff, the Treasurer's failure to use that listed and known address to send notice of the foreclosure proceedings to the plaintiff was constitutionally insufficient. *Id.* at 515.

Unlike *Sidun* there is no evidence indicating that the Treasurer was aware of a different address for DLD. The address listed on DLD's deed was, in fact, the same address that the Treasurer used to send notice to DLD. Moreover, although DLD presented evidence that it was not notified that its property was split into two different tax ID numbers by the City of Detroit, there is no evidence suggesting that the Treasurer was aware that DLD had not been notified. In other words, unlike the *Sidun*, in this case, the Treasurer was not actually aware of additional information that would have aided it in providing DLD with notice of the foreclosure proceedings. Instead, the record reflects that the Treasurer used the information it had available to provide DLD with notice of the foreclosure proceedings against both Fort Street properties. And, although the notices did not include the same tax ID number as listed on DLD's deed, the legal description for both properties overlapped with the legal description provided on DLD's deed, and DLD was identified in the notices as the owner of the properties.

In sum, based on the information that it had available, the Treasurer made a number of attempts to notify DLD about the foreclosure proceedings against it. It sent notice to DLD via certified first class mail. Although the result of that mailing was unknown with respect to one property and returned as undeliverable as addressed in another, the Treasurer made additional, reasonable efforts to notify DLD about the foreclosure proceedings. Rather, for three consecutive weeks, it published notice in the Detroit Legal News, identifying the properties by their legal descriptions, their common known address, their tax ID number, and that DLD was the owner. In addition, a process server for the Treasurer personally visited the properties and, upon finding that the properties were unoccupied and abandoned structures, he posted notice of the foreclosure proceedings in a conspicuous manner on the properties and photographed the same. These efforts, under the facts of this case, were sufficient to satisfy due process. And DLD's remaining arguments, such as whether various provisions of the GPTA were complied with constitute an impermissible collateral attack under the present circumstances. Accordingly, the trial court did not err by finding it lacked jurisdiction over DLD's claim.[4]

Affirmed. The Treasurer may tax costs as the prevailing party. MCR 7.219(A).

/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh
/s/ Michael J. Kelly

---

[4] Given our resolution, we decline to address the alternative arguments raised by the Treasurer to affirm the trial court's order.