**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:     Justices:
Clifford W. Taylor     Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JULY 2, 2008

STELLA SIDUN,

       Plaintiff-Appellant,

v

No. 131905

WAYNE COUNTY TREASURER,

       Defendant-Appellee.

BEFORE THE ENTIRE BENCH

CAVANAGH, J.

We granted leave to appeal in this case to determine whether defendant Wayne County Treasurer's efforts to provide notice of foreclosure proceedings to plaintiff Stella Sidun satisfied due process in light of *Jones v Flowers*, 547 US 220; 126 S Ct 1708; 164 L Ed 2d 415 (2006). Because the county treasurer failed to employ reasonable follow-up methods to notify plaintiff of the proceedings involving her property, we hold that plaintiff's due-process rights were violated. The Court of Appeals erred by concluding that the county treasurer's efforts met the requirements described by *Jones*. Therefore, we reverse the judgment of the Court of Appeals and remand to the circuit court for further proceedings.

## I. STATEMENT OF FACTS AND PROCEEDINGS

Plaintiff's mother, Helen Krist, owned a two-family dwelling at 2691 Commor Street in Hamtramck for several decades. In 1979, Krist executed a quitclaim deed conveying the Hamtramck property to herself and to plaintiff as joint tenants. The deed stated that "HELEN KRIST . . . the address of which is 3233 Stolzenfeld-Warren, MI 48091" quitclaims the property "to HELEN KRIST and STELLA SIDUN, as joint tenants with right of survivorship and not as tenants in common, whose street number and postoffice address is 3233 Stolzenfeld-Warren, MI 48091 and 2681 Dorchester-Birmingham, MI 48008 . . . ." The deed was properly recorded with the Wayne County Register of Deeds.

Krist used the Hamtramck residence as rental property, taking primary responsibility for maintaining the property and collecting rent from its tenants. Plaintiff assisted Krist by driving her to the property to collect the rent and writing receipts. The utility bills for the property were sent to Krist's residence in Warren, and plaintiff assisted Krist in paying them as well. Krist developed Alzheimer's disease in the late 1990s. In 1998, Krist moved from her Warren residence to live with plaintiff and her husband in their Birmingham residence. Plaintiff's husband arranged to have the utility bills from the Hamtramck property sent to the Birmingham address. However, the Hamtramck city assessor and the county treasurer were not informed of Krist's new address. The Warren house was sold several months after Krist moved to Birmingham.

2

Wayne County tax bills are mailed to the address of the taxpayer, as recorded by the local assessor. During the tax years of 1999 to 2003, the county treasurer mailed all tax bills for the Hamtramck property to Krist at the Warren residence, which was consistent with the Hamtramck city assessor's records from that period. Plaintiff was not mentioned in the city assessor's records. Krist and plaintiff failed to pay the county property taxes on the Hamtramck property for the tax years 2000 and 2001, resulting in a tax delinquency of $2,066.45.

In accordance with the General Property Tax Act (GPTA), MCL 211.1 *et seq*., the county treasurer sent two notices of tax delinquency by first-class mail, address correction requested, to Krist at the Warren address. Notice of tax delinquency was also sent by certified mail, return receipt requested, to Krist at the Warren address; it was returned as undeliverable. After the property was forfeited to the county treasurer, a petition for foreclosure was filed on June 14, 2002. The county treasurer took several additional steps required by MCL 211.78i as part of the foreclosure proceedings. On the basis of the information located on the property's deed, the county treasurer sent notice of the show-cause and foreclosure hearings by certified mail addressed to both Krist and plaintiff at the Warren address on December 18, 2002. The letter was returned as undeliverable. A representative of the county treasurer visited the property and posted notice of the foreclosure petition on the property, as the representative was unable to personally meet with the occupant. The county treasurer also published notification three times in the public-notice section of the Michigan Citizen, a community

3

newspaper. However, notice was never sent to plaintiff's Birmingham residence, which was on the recorded deed.

Krist died on January 1, 2003. A show-cause hearing regarding why the property should not be foreclosed was held on January 14, 2003. The foreclosure hearing was held on February 26, 2003. On March 10, 2003, a judgment of foreclosure was entered against the property and absolute title vested in the county treasurer. The county treasurer sold the property at auction for $52,000 to the owner of Krist's former Warren residence. At the time of the purchase, the property had an appraised value of $85,000. Plaintiff and her husband learned of the sale from a tenant of the property, who contacted them after the new owner attempted to collect rent.

Plaintiff filed suit, alleging that she had been wrongfully deprived of her property without proper notice in violation of the GPTA and the Due Process Clause of the Michigan Constitution. The trial court denied plaintiff's motion for summary disposition and granted summary disposition for the county treasurer, ruling that the attempts to notify plaintiff satisfied due process and the requirements of the GPTA. Plaintiff appealed to the Court of Appeals, which, in a split decision, affirmed the trial court's order.[1] Plaintiff appealed to this Court; we vacated the judgment of the Court of Appeals and remanded for reconsideration in

---

[1] *Sidun v Wayne Co Treasurer*, unpublished opinion per curiam of the Court of Appeals, issued January 19, 2006 (Docket No. 264581).

4

light of *Jones*. 475 Mich 882 (2006). On remand, the Court of Appeals, again in a split decision, reached the same result, holding that *Jones* did not compel a different conclusion because the county treasurer's efforts to provide notice were sufficient to satisfy due process, particularly in light of the county's follow-up measure of posting notice on the property.[2] This Court granted plaintiff's application for leave to appeal. 480 Mich 864 (2007).

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision regarding a motion for summary disposition. *Herald Co v Bay City*, 463 Mich 111, 117; 614 NW2d 873 (2000). This Court also reviews constitutional issues de novo. *Harvey v Michigan*, 469 Mich 1, 6; 664 NW2d 767 (2003).

## III. CONSTITUTIONAL NOTICE REQUIREMENTS

The Due Process Clause of the Michigan Constitution states: "No person shall be . . . deprived of life, liberty or property, without due process of law." Const 1963, art 1, § 17. The corresponding provision of the United States Constitution is applicable to Michigan through the Fourteenth Amendment, and provides in part, "nor shall any person . . . be deprived of life, liberty, or property, without due process of law." US Const, Am V. It is undisputed that plaintiff holds a property interest in the subject property; accordingly, she has a

---

[2] *Sidun v Wayne Co Treasurer*, unpublished opinion per curiam of the Court of Appeals, issued August 15, 2006 (Docket No. 264581).

5

constitutional right to due process of law before the government takes title to the property.

Proceedings that seek to take property from its owner must comport with due process.[3]  A fundamental requirement of due process in such proceedings is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v Central Hanover Bank & Trust Co*, 339 US 306, 314; 70 S Ct 652; 94 L Ed 865 (1950).  Interested parties are "entitled to have the [government] employ such means 'as one desirous of actually informing [them] might reasonably adopt' to notify [them] of the pendency of the proceedings." *Dow v Michigan,* 396 Mich 192; 240 NW2d 450 (1976), quoting *Mullane, supra* at 315.  That is, the means employed to notify interested parties must be more than a mere gesture; they must be means that one who actually desires to inform the interested parties might reasonably employ to accomplish actual notice.  *Mullane, supra* at 315.  However, "[d]ue process does not require that a property owner receive actual notice before the government may take his property." *Jones*, *supra* at ___; 126 S Ct at 1713.  In this case, the county treasurer attempted to notify plaintiff of the foreclosure proceedings, but actual notice was not achieved.  Thus,

---

[3] "The state has no proper interest in taking a person's property for nonpayment of taxes without proper notice and opportunity for a hearing at which the person can contest the state's right to foreclose and cure any default determined."  *Dow, supra* at 210 (applying *Mullane v Central Hanover Bank & Trust Co,* 339 US 306; 70 S Ct 652; 94 L Ed 865 [1950]).

6

the issue is whether the methods employed by the county treasurer were sufficient to satisfy due-process requirements.[4]

A notification method may be reasonable and constitutional if employing the method is "reasonably certain to inform those affected," or, when circumstances do not reasonably permit such notice, if the method employed is not substantially less likely to provide notice than other customary alternative methods. *Mullane*, *supra* at 315. Notably, *Mullane* recognized that the reasonableness of a particular method could vary, depending on what information the government had. That case concerned a New York law that merely required notice by publication to inform beneficiaries of a common trust fund that the fund was subject to judicial settlement. *Id*. at 309-310. The Court held that while notice by publication was constitutionally sufficient with regard to beneficiaries whose interests or addresses were unknown, notice by publication was insufficient

---

[4] While plaintiff also alleged violations of the GPTA, we will not review the disposition of these claims. As a practical matter, any remedies available to plaintiff are contingent on her constitutional claim since MCL 211.78(2) states in relevant part, "The failure of this state or a political subdivision of this state to follow a requirement of this act relating to the return, forfeiture, or foreclosure of property for delinquent taxes shall not be construed to create a claim or cause of action against this state or a political subdivision of this state unless the minimum requirements of due process accorded under the state constitution of 1963 or the constitution of the United States are violated." See also MCL 211.78i(10), which states, "The failure of the foreclosing governmental unit to comply with any provision of this section shall not invalidate any proceeding under this act if the owner of a property interest or a person to whom a tax deed was issued is accorded the minimum due process required under the state constitution of 1963 and the constitution of the United States."

for beneficiaries whose names and addresses were known by the government. "Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." *Id*. at 318. Notice by publication was inadequate in the case of known beneficiaries "because under the circumstances it is not reasonably calculated to reach those who could easily be informed by other means at hand." *Id*. at 319.

Moreover, even if a statutory scheme is reasonably calculated to provide notice in the ordinary case, the United States Supreme Court has nevertheless "required the government to consider unique information about an intended recipient." *Jones*, *supra* at ___; 126 S Ct at 1716. The Court has explained that the "'notice required will vary with [the] circumstances and conditions.'" *Id*. at ___; 126 S Ct at 1714 (citation omitted). The government's knowledge that its attempt at notice has failed is a "'circumstance and condition' that varies the 'notice required.'" *Id*. (citations omitted). In such a case, the adequacy of the government's efforts will be evaluated in light of the actions it takes after it learns that its attempt at notice has failed. The Court explained, "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id*. at ___; 126 S Ct at 1713. "What steps are reasonable in response to new information depends upon what the new information reveals." *Id*. at ___; 126 S Ct at 1718. For example, when certified mail is returned as

8

"unclaimed," it means either that the addressee still lives at that address but was not home when the mail was delivered and did not retrieve it, or that the addressee no longer resides at that address. *Id*. Under those circumstances, a reasonable follow-up measure aimed at the first possibility would be to resend the notice by regular mail. *Id*. at ___; 126 S Ct at 1718-1719. Reasonable follow-up measures directed at the possibility that the addressee had moved would be to post notice on the front door or to send notice addressed to "occupant." *Id*. at ___; 126 S Ct at 1719. Although the government must take reasonable additional steps to notify the owner, it is not required to go so far as to "search[] for [an owner's] new address in the . . . phonebook and other government records such as income tax rolls." *Id*. at ___; 126 S Ct at 1719. Ultimately, the Court did not prescribe the form of service that should be adopted in any given case, but simply observed that for purposes of its holding—which found the state's follow-up actions insufficient—it sufficed that additional reasonable steps were available for the state to employ before taking the property. *Id*. at ___; 126 S Ct at 1721.

## IV. THE INITIAL ATTEMPT AT PROVIDING NOTICE

Applying the principles established by *Mullane* and *Jones* to this case, we conclude that the measures taken by the county treasurer to inform plaintiff of the foreclosure proceedings were constitutionally deficient. When there are multiple owners of a piece of property, due process entitles each owner to notice of foreclosure proceedings. See *Mennonite Bd of Missions v Adams*, 462 US 791, 799; 103 S Ct 2706; 77 L Ed 2d 180 (1983). The notice provisions of the GPTA

9

seek to fulfill this obligation. After the foreclosing governmental unit has determined the owners of a property interest in the subject property, it must send notice by certified mail to those owners at "the address reasonably calculated to apprise those owners" of the foreclosure proceedings. MCL 211.78i(2).[5] Pursuant to this provision, the county treasurer sent certified mail, addressed to both Krist and plaintiff, to the Warren residence. At the time the letter was sent, sending mail to Krist at the Warren address was a method reasonably calculated to notify her of the proceedings because that address was on file with the Hamtramck city assessor. Moreover, the deed confirmed that Krist lived at the Warren residence. However, using the same Warren address to contact both property owners was not reasonable in light of the information known by the county treasurer.

To identify all interest-holders in the property under MCL 211.78i(1), the county treasurer was required to consult the deed to the property.[6] And, in fact,

_____

[5] MCL 211.78i(2) provides in relevant part:

[T]he foreclosing governmental unit or its authorized representative shall determine the address reasonably calculated to apprise those owners of a property interest of the show cause hearing under section 78j and the foreclosure hearing under section 78k and shall send notice of the show cause hearing under section 78j and the foreclosure hearing under section 78k to those owners, and to a person entitled to notice of the return of delinquent taxes under section 78a(4), by certified mail, return receipt requested, not less than 30 days before the show cause hearing.

[6] MCL 211.78i(1) states in part: "The foreclosing governmental unit shall initiate a search of records identified in subsection (6) to identify the owners of a property interest in the property who are entitled to notice under this section of the
(continued…)

10

the county treasurer did consult the deed and discover plaintiff's property interest. But it was unreasonable for the county treasurer to assume that both property holders resided at the Warren address, when the deed denotes two property holders with different last names and references two separate addresses. Further, the initial reference linking Krist to the Warren residence supports the inference that the Birmingham address belongs to plaintiff, the other owner. The beginning of the deed states, "HELEN KRIST, formerly HELEN CHWALEBA, survivor of herself and ANDREW CHWALEBA, her former husband, . . . the address of which is 3266 Stolzenfeld-Warren, MI 48091 Quit Claims to HELEN KRIST AND STELLA SIDUN" the subject property. Immediately following this reference, the deed repeats the Warren address and mentions the Birmingham address for the first time; it lists Krist's name first and plaintiff's name second and then provides Krist's address first and plaintiff's address second. Although the deed does not specifically state, "the following is Sidun's address," a reasonable person would be able to infer that the *second address* is plaintiff's address given that plaintiff's name is the *second name* listed immediately above the addresses. Accordingly, the deed did not support the county treasurer's interpretation that both Krist and plaintiff resided at the single address, because that would leave the Birmingham address unexplained. The county treasurer also knew that Krist *alone*

---

(…continued)
show cause hearing under section 78j and the foreclosure hearing under section 78k." The first type of records specified in subsection (6) are land title records in the office of the county register of deeds. MCL 211.78i(6)(a).

11

was listed as the taxpayer for the property at the Warren address. In light of all the information, a reasonable person would deduce that Krist was connected to the Warren address, while plaintiff was connected to the Birmingham address. Accordingly, a person who actually wished to notify both property owners would have sent a letter to the Birmingham address, rather than operating as if it were never mentioned in the deed.

If the government provides notice by mail, due process requires it to be mailed to an "address reasonably calculated to reach the person entitled to notice." *Dow, supra* at 211. The address "reasonably calculated to reach [plaintiff]," a person who was entitled to notice, was her home address that was listed on the recorded deed in defendant's possession. Because defendant had plaintiff's address at hand, but failed to mail notice to her at that address, defendant failed to accord plaintiff minimal due process.

Our holding does not categorically require foreclosing entities to search for and send notice to additional addresses whenever multiple owners are entitled to notice of foreclosure. And neither due process nor the GPTA generally requires a foreclosing entity to send notice to all addresses that the entity has, or could have, discovered. The guiding principle remains that notice must be "reasonably calculated" to apprise interested parties of the action and to provide them an opportunity to be heard. *Mullane, supra* at 314; *Dow, supra* at 211. Under different circumstances, sending notice to multiple owners at one address may well satisfy this standard. But here, the deed in the treasurer's possession listed

two owners and two addresses, and, in light of the deed's wording, sending notice to both owners at the first address only was constitutionally insufficient.

## V. THE FOLLOW-UP NOTIFICATION MEASURES

The follow-up measures taken by the county treasurer were insufficient to rectify the failed attempt to notify plaintiff. When the county treasurer learned that the certified mail sent to the Warren address had been returned, it was alerted that Krist, plaintiff, or both either did not live there or had not been home at the time. As additional steps, the county treasurer posted notice on the Hamtramck property and published notice. These both may be reasonable follow-up measures, as *Jones* recognized. However, *Jones* also indicated that what constitutes a reasonable follow-up measure depends on the circumstances, including what information the government had both before and after its failed attempt.

In this case, the county treasurer knew that there were two owners and two addresses listed on the deed, but it only sent notice to one address. When that notice failed with respect to *both* owners, a reasonable additional step would have been to attempt sending notice to the other address in the deed, whether addressed to Krist, plaintiff, or both. A person who actually desired to inform a real-property owner of an impending tax sale of a house she owns would not fail to send notice to the second of two addresses on the recorded deed that such person had in his possession, especially when the notice sent to the other address came back unclaimed. The reasonable alternative measure of sending notice to the Birmingham address was obviously available to the county treasurer, as *Jones*

13

requires, since the county treasurer had already consulted the deed to identify plaintiff as a property owner.

This step is far from asking the government to conduct a search for a new address in a phone book or income-tax rolls. See *Jones, supra* at ___; 126 S Ct at 1719. The burden on the government would have been slight; defendant would not have had to search for plaintiff's address because it was in the recorded deed that the county treasurer had already consulted, and it only involved exploring one alternative address. Thus, while the county treasurer should have sent notice to the Birmingham address when it first attempted to contact both property owners, it particularly should have done so when it learned that its initial methods of providing notice had failed. The address "reasonably calculated to reach [plaintiff]," *Dow, supra* at 211, a person who was entitled to notice, was her home address that was listed on the recorded deed in defendant's possession. Similarly, "'one desirous of actually' . . . notify[ing] [plaintiff] of the pendency of the proceedings," *Dow, supra* at 211, quoting *Mullane, supra* at 315, would certainly have mailed notice to plaintiff's home address that was listed on the recorded deed in defendant's possession, particularly when the notice mailed to the other address listed on the deed was returned unclaimed. "This is especially true when, as here, the subject matter of the [notice] concerns such an important and irreversible prospect as the loss of a house." *Jones, supra* at ___; 126 S Ct at 1716.

It is worth noting that the government's constitutional obligation to provide notice is not excused by an owner's failure to keep his or her address updated in

14

government records. A party's ability to take steps to safeguard its own interests does not relieve the government of its constitutional obligation. *Jones*, *supra* at ___; 126 S Ct at 1717. Similarly, "the common knowledge that property may become subject to government taking when taxes are not paid does not excuse the government from complying with its constitutional obligation of notice before taking private property." *Id*. On the contrary, "an interested party's 'knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending.'" *Id*. at ___; 126 S Ct at 1717, quoting *Mennonite Bd, supra* at 800. Thus, while plaintiff should have been more diligent regarding the tax liability on her property, the government may not take that property without providing due process of law.

## VI. CONCLUSION

Given that plaintiff's due-process rights were violated, the circuit court erred in denying her motion for summary disposition and granting summary disposition for the county treasurer. Further, at the time plaintiff filed her claim, she sought only money damages, not to set aside the judgment of foreclosure. Indeed, the GPTA specifically precludes claims seeking to modify judgments of foreclosure and limits causes of action arising under the act to claims for money damages.[7] However, while plaintiff's appeal was pending, we decided *In re*

---

[7] MCL 211.78*l*(1) provides:

(continued…)

15

*Petition by Wayne Co Treasurer*, 478 Mich 1; 732 NW2d 458 (2007), in which we held unconstitutional the provisions of the GPTA that vest absolute title in the foreclosing governmental unit without allowing the circuit court to modify judgments of foreclosure if an owner has been deprived of due process. *Id*. at 10-11. Plaintiff is such an owner; thus, the provisions of the GPTA that limit her remedy to money damages and strip the circuit court of jurisdiction to set aside the foreclosure are unenforceable against her. We reverse the Court of Appeals judgment and remand the case to the circuit court for further proceedings consistent with this opinion.

> Michael F. Cavanagh
> Clifford W. Taylor
> Elizabeth A. Weaver
> Marilyn Kelly
> Maura D. Corrigan
> Robert P. Young, Jr.
> Stephen J. Markman

---

(…continued)

If a judgment for foreclosure is entered under section 78k and all existing recorded and unrecorded interests in a parcel of property are extinguished as provided in section 78k, the owner of any extinguished recorded or unrecorded interest in that property who claims that he or she did not receive any notice required under this act shall not bring an action for possession of the property against any subsequent owner, but may only bring an action to recover monetary damages as provided in this section.