*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRADFORD ZABIK and TRACY ZABIK,

Plaintiffs-Appellants,

v

JOHN R. JANSEN and WAYNE COUNTY TREASURER,

Defendants-Appellees,

and

34TH JUDICIAL DISTRICT COURT, ALAN HINDMAN, and VICTOR LOTYCZ,

Defendants.

UNPUBLISHED
March 21, 2019

No. 340050
Wayne Circuit Court
LC No. 17-002855-CH

Before: BORRELLO, P.J., and SWARTZLE and CAMERON, JJ.

PER CURIAM.

In this quiet title action arising out of the foreclosure on the home of plaintiffs Bradford and Tracy Zabik for unpaid taxes, the Zabiks appeal as of right the trial court's order granting the summary disposition motions of defendants Wayne County Treasurer and John R. Jansen. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

On March 29, 2016, the Wayne County Treasurer obtained a judgment of foreclosure in the Wayne Circuit Court against a parcel of property that Bradford owned and where he lived with his wife, Tracy. The judgment of foreclosure was based on unpaid delinquent taxes, interest, penalties, and fees for the year 2013 that had resulted in the parcel being forfeited to the Wayne County Treasurer pursuant to MCL 211.78g. In the judgment, the court ordered that fee simple title to the parcel would vest absolutely in the Wayne County Treasurer, with no further rights of redemption, "if all the forfeited delinquent taxes, interest, penalties and fees foreclosed against the parcel [were] not paid to the County Treasurer on or before March 31, 2016." The

-1-

judgment further provided that the failure to pay all of the forfeited delinquent taxes, interest, penalties, and fees on or before March 31, 2016 would result in the Wayne County Treasurer having good and marketable fee simple title to the property. On October 26, 2016, the property was conveyed by quit claim deed from the Wayne County Treasurer to defendant John Jansen.

On February 13, 2017, the Zabiks initiated this action by filing a combined petition for a temporary restraining order (TRO) and motion for an emergency hearing seeking preliminary injunctive relief to prevent the Zabiks from being evicted from the property.[1] In the petition, the Zabiks alleged that they had lived on the property for 30 years and believed that they had paid all of the taxes that they thought were owed. The Zabiks further alleged that for approximately 6 months of each year, they stay at the home of Bradford's father where they farm and sell their crops at a roadside stand. The Zabiks claimed that they had never received notice that they "no longer owned the property" that is the subject of this action.

The Zabiks filed a first amended complaint on February 14, 2017, alleging that they had not received notice of any tax delinquency or of the foreclosure proceedings before the judgment of foreclosure was entered. Additionally, the Zabiks alleged that the Wayne County Treasurer did not comply with the applicable provisions of the General Property Tax Act (GPTA), MCL 211.11 *et seq*., or the requirements of constitutional due process because the Wayne County Treasurer did not take reasonable additional steps to provide notice to the Zabiks after the notices sent by the Treasurer via certified mail were returned and personal visits on the Treasurer's behalf to the property suggested that the property was abandoned. The Zabiks asked the court to issue an order setting aside the judgment of foreclosure as void and rescinding the sale of the property.

After the trial court granted the TRO and the preliminary injunction, the Zabiks filed a second amended complaint in which they added the Wayne County Treasurer as a defendant and repeated their allegations that the Treasurer failed to take reasonable steps to ensure that the Zabiks received notice of the foreclosure proceedings in light of the facts that should have been known by the Treasurer. According to the Zabiks' allegations, the Treasurer's records reflected that mailings sent to the Zabiks were unclaimed, and the Treasurer was on notice that the property appeared abandoned or unoccupied as a result of personal visits conducted on the Treasurer's behalf. In addition to the relief previously requested, the Zabiks asked the trial court to "grant permanent injunctive relief in the form necessary to return fee title" to them.

The Wayne County Treasurer subsequently moved for summary disposition under MCR 2.116(C)(4), (7), (8), and (10). The Treasurer argued that the trial court lacked jurisdiction to set

---

[1] The order of possession, which provided for the Zabiks to be evicted from the property, had been entered by the 34th District Court. Alan Hindman was the court administrator for the 34th District Court, and Victor Lotycz was the court officer for the 34th District Court. The Zabiks had also filed a motion in the 34th District Court to stay execution of the order of possession and to set aside the 34th District Court's December 2016 default judgment that had been entered against them. The 34th District Court, Hindman, and Lotycz are not parties to the instant appeal.

aside the judgment of foreclosure because minimum due process requirements had been satisfied. The Treasurer maintained that it followed the notice provisions of the GPTA, expended reasonable efforts to give notice, and provided the Zabiks with constitutionally sufficient notice of the show cause and judicial foreclosure hearings.

In support of its arguments, the Wayne County Treasurer submitted evidence of its attempts to provide the Zabiks with notice of the foreclosure proceedings. First there was evidence that a "Notice of Show Cause Hearing and Judicial Foreclosure Hearing" and a "Notice of Property Tax Delinquency" were sent to the property and addressed to Bradford by certified mail, return receipt requested, on at least three occasions in December 2015. Bradford was the only person listed in the tax records as the owner of the subject property. These certified mail notices were returned as "unclaimed." Additionally, a Notice of Pending Tax Foreclosure, including notice of the show cause and judicial foreclosure hearings, was sent to the property by first-class mail. The record also reflects that notice was sent to the property and addressed to "occupant," and this notice was delivered. There was also evidence, in the form of a notarized "Proof of Personal Visit" completed and signed by the visiting agent, that a personal visit to the subject property had been made on behalf of the Wayne County Treasurer on November 20, 2015. The property was found to be "an unoccupied/abandoned structure," and no personal meeting with an occupant of the property occurred. The foreclosure petition and notice of the show cause hearing and judicial hearing were placed in a conspicuous manner on the property. A photograph of the property was taken. Next, there was evidence that notice was published once a week for three consecutive weeks in the Detroit Legal News during December 2015.

Jansen also moved for summary disposition under MCR 2.116(C)(8) and (10), arguing that the present action amounted to an impermissible collateral attack on the foreclosure judgment, that the Zabiks lacked standing to bring the action because they had been divested of all rights in the property by the foreclosure judgment, that the current action was barred by res judicata, and that the Zabiks were provided with minimal due process such that the trial court lacked jurisdiction to set aside the foreclosure judgment. Regarding this last argument, Jansen maintained that the Zabiks were really arguing that they had not received "actual" notice rather than arguing that the address to which notice was sent was incorrect, and minimum due process does not require that "actual" notice be received.

The Zabiks responded to the motions for summary disposition and argued that the Wayne County Treasurer failed to make reasonable follow-up efforts after learning that its attempts to give notice had failed. The Zabiks asserted that the Treasurer became aware that its attempt to give notice had failed in late 2015 after its agent observed the property to be abandoned and unoccupied. The Zabiks claimed that the Treasurer then had the burden to make reasonable additional steps to provide notice to Bradford as the property owner. According to the Zabiks, the Treasurer should have sought information about how to contact the Zabiks from their neighbors, who would have been able to provide the location of the Zabiks' vegetable stand that they had operated for over 30 years. The Zabiks additionally argued that the photograph of the property in the record was "illegible" and did not show that the notice had actually been placed in a conspicuous place on the property.

Both Tracy and Bradford executed affidavits that were attached in support of their response to the motions for summary disposition. Tracy averred that she and Bradford spend

approximately six to eight months a year living on the farm where they run their roadside produce stand rather than on the subject property. According to Tracy's affidavit, her sister called in December 2015 and told Tracy that she had "heard" that Tracy and Bradford "were going to lose his home for past due taxes." Tracy further averred that she then gave her checking account number to "a friend" who owned a computer and asked him to pay the taxes online, after which the friend informed Tracy that the Treasurer rejected the payment for being "a bad check." Tracy averred that she instructed her friend to try again and assumed until the instant lawsuit that the taxes had actually been paid. Tracy maintained that she believed that all taxes had been paid, and she never told Bradford about the delinquent taxes because she "was very concerned about his reaction." Tracy also indicated that she never saw any papers posted on the property, that she never had actual knowledge of the foreclosure proceedings against the property, and that the Zabiks' neighbors knew were the vegetable stand was located. Tracy claimed that Jansen told Bradford's mother in January 2016 that he had bought the property and wanted to know if the Zabiks were interested in buying it back. Bradford averred that he never knew that the taxes on his home were unpaid for 2013 and 2014, that he did not know that his home had been foreclosed and sold until Jansen approached Bradford's parents, and that he never received any foreclosure notice or saw any foreclosure notice posted on the property.

Following a hearing on the motions for summary disposition, the trial court ruled that the Wayne County Treasurer and Jansen were entitled to summary disposition in their favor under MCR 2.116(C)(10) because "the undisputed evidence establishes the Treasurer used reasonable efforts to give notice of the foreclosure proceedings." The trial court concluded that the minimum requirements of due process were met because notice was sent in three certified mailings to a good address for Bradford, notice was sent by first-class mail to the address, notice was posted on the property, and notice of the foreclosure proceedings was published in the Detroit Legal News. The trial court further concluded that summary disposition was appropriate under MCR 2.116(C)(4) because the court was without jurisdiction over the matter since the minimum requirements of due process were satisfied. Title was quieted in favor of Jansen, and the court dismissed the action with prejudice. This appeal ensued.

## II. STANDARD OF REVIEW

Constitutional issues are also reviewed de novo. *Sidun v Wayne Co Treasurer*, 481 Mich 503, 508; 751 NW2d 453 (2008). A trial court's summary disposition ruling is also reviewed de novo, *id*., as are jurisdictional questions, *Forest Hills Coop v Ann Arbor*, 305 Mich App 572, 617; 854 NW2d 172 (2014).

## III. ANALYSIS

On appeal, the Zabiks maintain that the minimal requirements of due process were not satisfied because the Treasurer was obligated to inquire about the Zabiks' whereabouts from their neighbors in order to effectuate notice.

The GPTA provides procedures for the forfeiture, foreclosure, and sale of property for purposes of enforcing and collecting delinquent taxes, including interest penalties, fees, and unpaid special assessments or other assessments. MCL 211.78a(1). Generally, if a property owner does not redeem the property or appeal the judgment of foreclosure within the time limits

-4-

and according to the procedures provided in the relevant subsections of MCL 711.28k,[2] then MCL 211.78k(6) vests fee simple title absolutely in the foreclosing governmental unit and "deprives the circuit court of jurisdiction to alter the judgment of foreclosure." *In re Treasurer of Wayne Co for Foreclosure*, 478 Mich 1, 8; 732 NW2d 458 (2007). However, a circuit court retains jurisdiction to consider a property owner's challenge to the propriety of a foreclosure judgment in limited circumstances where the property owner was denied due process of law as a result of receiving constitutionally inadequate notice of the foreclosure proceedings. *Id*. at 10-11.

In this case, a judgment of foreclosure was entered against Bradford's property based on unpaid delinquent taxes, interest, penalties, and fees. Bradford did not directly appeal the judgment of foreclosure. Instead, he and Tracy filed a separate action—almost one year after the judgment of foreclosure was entered—challenging the foreclosure on the ground that they did not receive adequate notice of the foreclosure proceedings to satisfy the demands of minimal constitutional due process. The Zabiks' appellate argument is solely premised on the alleged due process violation.

Foreclosure proceedings under the GPTA "that seek to take property from its owner must comport with due process." *Sidun*, 481 Mich at 506-507, 509. In *Sidun*, our Supreme Court explained in detail the requirements for satisfying a property owner's due process rights with respect to notice in this context:

> A fundamental requirement of due process in such proceedings is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v Central Hanover Bank & Trust Co*, 339 US 306, 314; 70 S Ct 652; 94 L Ed 865 (1950). Interested parties are "entitled to have the [government] employ such means 'as one desirous of actually informing [them] might reasonably adopt' to notify [them] of the pendency of the proceedings." *Dow v Michigan*, 396 Mich 192; 240 NW2d 450 (1976), quoting *Mullane*, [339 US] at 315. That is, the means employed to notify interested parties must be more than a mere gesture; they must be means that one who actually desires to inform the interested parties might reasonably employ to accomplish actual notice. *Mullane*, [339 US] at 315. However, "[d]ue process does not require that a property owner receive actual notice before the government may take his property." *Jones*[ v *Flowers*, 547 US 220, 226; 126 S Ct 1708; 164 L Ed 2d 415 (2006)]. In this case, the county treasurer attempted to notify plaintiff of the

---

[2] See generally MCL 711.28k(5), (6), and (7). In this case, the Zabiks do not claim to have complied with any of these time limits or procedural requirements for redeeming the property or appealing the judgment of foreclosure, nor do the Zabiks claim that they are entitled to some form of statutory remedy under the GPTA. Instead, the Zabiks' sole appellate argument is that they are entitled to a remedy based on an alleged violation of their constitutional due process rights.

foreclosure proceedings, but actual notice was not achieved. Thus, the issue is whether the methods employed by the county treasurer were sufficient to satisfy due-process requirements.

A notification method may be reasonable and constitutional if employing the method is "reasonably certain to inform those affected," or, when circumstances do not reasonably permit such notice, if the method employed is not substantially less likely to provide notice than other customary alternative methods. *Mullane*, [339 US] at 315. Notably, *Mullane* recognized that the reasonableness of a particular method could vary, depending on what information the government had. That case concerned a New York law that merely required notice by publication to inform beneficiaries of a common trust fund that the fund was subject to judicial settlement. *Id*. at 309-310. The Court held that while notice by publication was constitutionally sufficient with regard to beneficiaries whose interests or addresses were unknown, notice by publication was insufficient for beneficiaries whose names and addresses were known by the government. "Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." *Id*. at 318. Notice by publication was inadequate in the case of known beneficiaries "because under the circumstances it is not reasonably calculated to reach those who could easily be informed by other means at hand." *Id*. at 319.

Moreover, even if a statutory scheme is reasonably calculated to provide notice in the ordinary case, the United States Supreme Court has nevertheless "required the government to consider unique information about an intended recipient . . . ." *Jones*, [547 US] at 230. The Court has explained that the " 'notice required will vary with [the] circumstances and conditions.' " *Id*. at 227 (citation omitted). The government's knowledge that its attempt at notice has failed is a " 'circumstance and condition' that varies the 'notice required.' " *Id*. (citations omitted). In such a case, the adequacy of the government's efforts will be evaluated in light of the actions it takes after it learns that its attempt at notice has failed. The Court explained, "[W]hen mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id*. at 225. "What steps are reasonable in response to new information depends upon what the new information reveals." *Id*. at 234. For example, when certified mail is returned as "unclaimed," it means either that the addressee still lives at that address but was not home when the mail was delivered and did not retrieve it, or that the addressee no longer resides at that address. *Id*. Under those circumstances, a reasonable follow-up measure aimed at the first possibility would be to resend the notice by regular mail. *Id*. Reasonable follow-up measures directed at the possibility that the addressee had moved would be to post notice on the front door or to send notice addressed to "occupant." *Id*. at 235. Although the government must take reasonable additional steps to notify the owner, it is not required to go so far as to "search[ ] for [an owner's] new address

-6-

in the . . . phonebook and other government records such as income tax rolls." *Id*. at 235-236. Ultimately, the Court did not prescribe the form of service that should be adopted in any given case, but simply observed that for purposes of its holding—which found the state's follow-up actions insufficient—it sufficed that additional reasonable steps were available for the state to employ before taking the property. *Id*. at 238. [*Sidun*, 481 Mich at 509-512 (first, second, third, sixth, tenth, eleventh, twelfth, and thirteenth alterations in original).]

In this case, the Wayne County Treasure attempted to provide notice by way of certified mail, first class mail, mail addressed to "occupant," posting notice in a conspicuous place on the subject property, and publication. The additional methods employed beyond certified mail were ones that, as our Supreme Court has recognized, have been suggested by the United States Supreme Court as potential reasonable steps for giving notice when certified mailings are returned as unclaimed. *Id*. at 510-512. Moreover, the Zabiks do not argue on appeal that these methods are somehow improper methods of attempting to give notice, nor do they explain why attempting to effectuate notice at the subject property itself is not reasonably calculated to provide notice under circumstances where, as the Zabiks admit, their home is located on the property. *Id*. at 509. Instead, the Zabiks essentially argue that the Treasurer's obligation to provide constitutionally adequate notice included a duty to conduct an investigation aimed at discovering the reasons for the Zabiks' apparent absence from their home and propensity for ignoring their mail, as well as the location where they were spending time away from home. The Zabiks do not cite any legal authority for such a duty, and the reasonable steps that the government must take in this context do not include searching for a new owner's address. *Id*. at 512. Furthermore, the Zabiks' argument actually amounts to a claim that the Treasurer was required to affirmatively ensure that notice was received; i.e., that the property owner had *actual* notice. However, " '[d]ue process does not require that a property owner receive actual notice before the government may take his property.' " *Sidun*, 481 Mich at 509, quoting *Jones*, 547 US at 226.

Therefore, the Zabiks have not demonstrated that the trial court erred by determining that the Zabiks' were afforded constitutionally sufficient due process and granting summary disposition in favor of the Wayne County Treasurer and Jansen.[3]

Affirmed.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Thomas C. Cameron

---

[3] In light of this conclusion, Jansen's remaining appellate arguments are moot and this Court need not consider them. *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998).