*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

TOWNSHIP OF ROSE,

Plaintiff/Counter-Defendant-Appellee,

v

JAMES W. HUTCHINSON and LORI S.
HUTCHISON,

Defendants/Counter-Plaintiffs-
Appellants.

UNPUBLISHED
July 30, 2020

No. 348927
Oakland Circuit Court
LC No. 2018-168310-CH

Before: MARKEY, P.J., and M. J. KELLY and BOONSTRA, JJ.

PER CURIAM.

Defendants/counter-plaintiffs, James and Lori Hutchison, appeal by right the trial court order dismissing their counter-claim and quieting title to a strip of land adjacent to their Oakland County, Markland Road property in favor of plaintiff/counter-defendant, Township of Rose. For the reasons stated in this opinion, we affirm in part, reverse in part, and remand for further proceedings.

## I. BASIC FACTS

In 1988, James Hutchinson purchased property located on Markland Road in Holly, Michigan. According to James, immediately after moving to the property, he began using a strip of land to the south of his house.[1] He claims that his use included landscaping, storing vehicles and other personal property, and building a shed. At some point, the Hutchisons learned that the strip of land was not actually part of their property. Instead, the disputed area was part of a 30.45-acre vacant lot owned by Ida and Clarence Carson.

---

[1] Based on the record before this Court, it appears that the strip of land is approximately 30 feet wide; however, nothing in the record indicates the length, approximate or otherwise, of the disputed strip.

In 2008, because of a tax delinquency, Oakland County initiated a foreclosure against the Carsons' property. Notice of the tax delinquency and the foreclosure was sent to the Carsons. Additionally, it is undisputed that the County posted notice of the foreclosure on the property. The foreclosure was also listed in two local newspapers. The petition for foreclosure was granted on February 11, 2009.

On August 26, 2009, Rose Township purchased the foreclosed property and received a deed for it. Apparently unaware of the foreclosure, the Hutchisons continued to use the strip of land adjacent to their property. Yet, in 2014, they also tried to purchase the property from the Township, which suggests that they eventually learned that the Carsons' property was foreclosed upon.[2]

In 2017, Lori Hutchison told the Rose Township supervisor that she had "squatter's rights" to the strip of land. In response, the Township directed the Hutchisons to remove their property from the disputed area. At first, the Hutchisons sought an extension of time, writing the Township to explain that the ground was wet and soft so they needed to wait until it dried out to move their property. They added that their car trailer had been on the property for over 10 years, which caused the tires to be swallowed by the earth, and they noted that another vehicle needed to be removed by a tow truck, which was not possible because of how wet and soft the ground was at that time. Thereafter, they moved some, but not all of their property.

Consequently, in 2018, the Township filed an action to quiet title to the property. The Township alleged that they owned Dearborn Park, which was a 117.77-acre park that included the 30.45 acres adjacent to the Hutchisons' property. The Township attached to their complaint a survey completed in March 2018 that showed the Hutchisons were storing their property on the Township's land. In response, the Hutchisons filed a counter-claim, asserting that they had acquired title to the disputed area by adverse possession or acquiescence. Alternately, they asserted that they had acquired the right to use the land by prescriptive easement. The Township moved for summary disposition. Following oral argument, the court granted summary disposition

---

[2] The Hutchisons' lawyer represented to the trial court that the reason the Hutchisons "found out about this whole thing" was because someone from the Township came to their property in 2017 and told them "Get your junk off—off our property." In their brief opposing summary disposition, they elaborated that the person from the Township was a township trustee who told Lori Hutchison that the Township was planning a picnic site for the area, including the disputed strip of land. The Hutchisons asserted that "[u]pon further inquiry, [they] learned that the Township was claiming ownership of the Area of Dispute." The Hutchisons, however, did not mention the supposed 2017 visit by a township trustee in their affidavits submitted in connection with their brief, nor did they attach any other evidence to support that the visit actually occurred. Accordingly, the unsupported allegation in their brief regarding the 2017 visit by the Township supervisor is inadequate to create a factual issue. See *Barnard Mfg Co, Inc v Gates Performance Engineering*, *Inc*, 285 Mich App 362, 374; 775 NW2d 618 (2009) (stating that to establish the existence of a genuine issue of disputed fact, the nonmoving party cannot "rely on 'mere allegations or denials' " in the pleadings but must instead, "by affidavits or as otherwise provided in [MCR 2.116(G)(4)], set forth specific facts showing that there is a genuine issue for trial.") (citation omitted).

in favor of the Township, quieting title in favor of the Township and dismissing the Hutchisons' counterclaim.

This appeal follows.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

The Hutchisons argue that the trial court erred by granting the Township summary disposition. We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering*, *Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). Questions of law, including questions of constitutional law, are also reviewed de novo. *In re Petition by Wayne Co Treasurer*, 478 Mich 1, 6; 732 NW2d 458 (2007).

### B. ANALYSIS

Generally, once the court enters a final judgment on a petition to foreclose, title vests "absolutely" in the foreclosing governmental unit if the interested party does not redeem the property within the statutory redemption period or appeal the judgment to this Court within 21 days. MCL 211.78k(6)-(7). This scheme "reflects a clear effort to limit the jurisdiction of courts so that judgments of foreclosure may not be modified other than through the limited procedures provided in the GPTA." *Wayne County Treasurer*, 478 Mich at 8. Although MCL 211.78k(6) deprives a circuit court of jurisdiction to alter a judgment of foreclosure if not redeemed or appealed within 21 days, the Supreme Court has interpreted the statute to grant jurisdiction to modify or vacate the judgment in situations where the petitioner fails to provide constitutionally adequate notice. *Id*. at 10-11. Therefore, the question in this case is whether the Hutchisons were provided with constitutionally adequate notice. If the notice provided was constitutionally adequate, then, pursuant to MCL 211.78k(6)-(7), the Hutchisons' interest in the disputed area was extinguished and the title to the area has vested absolutely in Oakland County, who then transferred it to the Township.

The Hutchisons argue that they acquired title to the disputed property by virtue of adverse possession in 2003. Alternatively, the Hutchisons assert that they acquired title by virtue of the doctrine of acquiescence or that a prescriptive easement affords them the right to continue using the disputed property to store vehicles and other assorted personal property. For purposes of this appeal, it is not necessary to determine under which theory the Hutchisons may have gained an interest in the disputed property because, like the trial court, we will assume that in 2003 they acquired either title to the disputed property or the right to use it.

Under MCL 565.451a(e), a person may file an affidavit indicating that the title to a property may be affected by an adverse possession claim. The statute, however, is permissive. See *Walters v Nadell*, 481 Mich 377, 383; 751 NW2d 431 (2008) (explaining that the word "may" generally denotes a permissive action rather than a mandatory action). As a result, a person claiming title to real property by virtue of adverse possession (or a related doctrine) need not file such an affidavit to obtain or maintain title to the property that was adversely possessed. Instead, as explained by our Supreme Court in *Beach v Township of Lima*, 489 Mich 99, 106-107; 802 NW2d 1 (2011):

To establish adverse possession, the party claiming it must show clear and cogent proof of possession that is actual, visible, open, notorious, exclusive, continuous and uninterrupted for the statutory period of 15 years, hostile and under cover of claim of right. After the statutory period ends, the record owner's title is extinguished and the adverse possessor acquires "legal title" to the property. Acquisition of title in this manner includes "the right to defend the possession and to protect the property against the trespass of all others." However, the title acquired by adverse possession is neither record title nor marketable title until the adverse possessor files a lawsuit and obtains a judicial decree. Thus, until an adverse possessor obtains the necessary judicial decree, there is no record of the adverse possessor's ownership interest to verify whether the possessor actually satisfied the elements of adverse possession. [Quotation marks and citations omitted.]

Therefore, assuming *arguendo* that the Hutchisons acquired legal title to the disputed property in 2003, they were not required to file an affidavit identifying their interest. However, failing to take steps to protect an unrecorded interest in real property is not wholly free of consequences.

It is well-established that both the United States Constitution and the Michigan Constitution prohibit the state from taking property without first providing the property owner with due process. US Const, AM XIV; Const 1963, art 1, § 17. In *Wayne County Treasurer*, our Supreme Court explained what notice is constitutionally required to satisfy due process, explaining that:

due process requires the government to provide notice reasonably calculated, *under all the circumstances*, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Furthermore, when notice is a person's due . . . [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. [*In re Wayne County Treasurer*, 478 Mich at 9 (quotation marks and citations omitted; first emphasis added).]

Under the General Property Tax Act (GPTA), MCL 211.1 *et seq*., "a 'foreclosing governmental unit shall file a single petition with the clerk of the circuit court of that county listing all property forfeited and not redeemed to the county treasurer under [MCL 211.78g] to be foreclosed under [MCL 211.78k] . . . .' " *Treasurer of Wayne Co*, 478 Mich at 6, quoting MCL 211.78h(1). "Before the hearing on the petition, the foreclosing governmental unit must provide proof of service of the notices required under the statute, as well as proof of the personal visit to the property and publication." *Treasurer of Wayne Co*, 478 Mich at 6, citing MCL 211.78k(1). "The notice provisions of the GPTA seek to fulfill [the constitutional] obligation" of affording due process to property owners before depriving them of their property. *Sidun v Wayne Co Treasurer*, 481 Mich 503, 512; 751 NW2d 453 (2008). "When there are multiple owners of a piece of property, due process entitles each owner to notice of foreclosure proceedings." *Id*. Where the foreclosing governmental unit complies with the statutory notice requirements, due process is satisfied. *Wayne County Treasurer*, 478 Mich at 10, n 19. Moreover, even partial compliance may satisfy due process "[b]ecause the notice provisions provide more notice than is required to satisfy due process. . . ." *Id*. "[D]ue process does not require that a property owner receive actual

notice before the government may take his [or her] property." *Sidun*, 481 Mich at 509 (quotation marks and citation omitted).

MCL 211.78i(1) provides:

Not later than May 1 immediately succeeding the forfeiture of property . . . the foreclosing governmental unit shall initiate a search of records identified in subsection (6) [tax records and land title records] to identify the owners of a property interest in the property who are entitled to notice under this section. . . .

MCL 211.78i(6) provides:

(6) The owner of a property interest is entitled to notice under this section of the show cause hearing under section 78j and the foreclosure hearing under section 78k *if that owner's interest was identifiable by reference to any of the following sources* before the date that the county treasurer records the certificate required under section 78g(2):

(a) Tax records in the office of the county treasurer.

(b) Tax records in the office of the local assessor.

(c) Tax records in the office of the local treasurer.

Here, as the Hutchisons' interest was not identifiable by reference to any of the above named sources, they were arguably not entitled to notice under the GPTA.

However, even if the Hutchisons were identifiable as parties with an interest in the property, that would not end the inquiry. After identifying parties with an interest in the property, the foreclosing governmental unit "must send notice by certified mail to those owners at 'the address reasonably calculated to apprise those owners' of the foreclosure proceedings." *Sidun*, 481 Mich at 512-513, quoting MCL 211.78i(2). In this case, because the Hutchisons' interest in the disputed property was unrecorded, even the most diligent search of the relevant records would not have revealed their interest. If the foreclosing governmental unit "is unable to ascertain the address reasonably calculated to apprise the owners . . . entitled to notice under this section," notice by publication can be substituted, consisting of a notice "published for 3 successive weeks, once each week, in a newspaper published and circulated in the county in which the property is located, if there is one." MCL 211.78i(5). Here, such notice was published for 3 successive weeks in two newspapers from the county where the disputed property is located.

On appeal, the Hutchisons contend that the newspaper notice was insufficient, noting that it did not even refer to them by name. However, as noted in *Wayne County Treasurer*, "due process requires the government to provide notice reasonably calculated, *under all the circumstances*, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Wayne County Treasurer*, 478 Mich at 9 (emphasis added). Here, "all the circumstances" includes that there was no searchable record indicating that the Hutchisons had an interest in the property. As a result, notwithstanding the fact that the Hutchisons were not

identified in the newspaper notice, we conclude that the newspaper notice was not deficient when considered in conjunction with all the circumstances.

A foreclosing entity must also make a personal visit to the property and attempt to notify any occupants of the pending foreclosure. MCL 211.78i(3). In this case, the record reflects that someone from Oakland County actually visited the property being foreclosed upon for a tax delinquency. On appeal, the Hutchisons contend that if such a visit had been properly conducted, it would have been determined that they were occupying the disputed strip of land. The Hutchisons point to their property being stored on the strip of land and assert that it is a question of fact whether the presence of property on the strip of land is sufficient to indicate that they were occupants of the disputed property. Yet, nothing in MCL 211.78i(3) requires the foreclosing governmental unit to evaluate every inch and acre of a property being foreclosed upon to ascertain whether or not the property is being partially occupied. Here, the property consisted of 30.45 acres of what was, as far as the county was aware, vacant land. The personal visit to the property was made on Williamson Road rather than Markland Road. Given that there was access to the property from Williamson Road, the requirement in MCL 211.78i(3) that a personal visit be made to the property was satisfied.

Moreover, even if Oakland County had made a personal visit to the property via the Hutchisons' Markland Road property, and even though the Hutchisons' property on the disputed section would have been plainly visible, the disputed strip is only approximately 30 feet wide, whereas the property being foreclosed consisted of 30.45 acres. It is unrealistic to assume that the County official visiting the property would have concluded that the disputed area was part of the parcel being foreclosed upon rather than part of the Hutchisons' property. And, although the exact boundary could have been determined with a survey, MCL 211.78i(3) does not require the foreclosing governmental unit to conduct a survey in order to determine if sections of the property that are adjacent to a neighboring property are part of the parcel being foreclosed upon or are part of the adjacent property. Stated differently, even viewing the facts in the light most favorable to the Hutchisons, nothing in the record supports a finding that if Oakland County had visited the Markland Road property it would have appeared to the person conducting the visit that the Carsons' property was, in fact, occupied by the Hutchisons.

The Hutchisons also contend that notice should have been posted in a different spot on the property. In support, they note that the notice of foreclosure appears to have been posted on Williamson Road, rather than on Markland Road. They suggest that notice posted at a nearby intersection would have alerted them to the foreclosure. Yet, the intersection does not appear to border the property. As a result, posting it there would not satisfy the statutory obligation under MCL 211.78i(3) of placing notice of the foreclosure "in a conspicuous manner *on the property . . . .*" (emphasis added). Here, as the record reflects that notice was posted on the property in what appears to be a conspicuous manner, the notice requirement in MCL 211.78i(3) was satisfied.[3]

---

[3] We note that there is nothing in MCL 211.78i(3) that requires notice to be posted in multiple conspicuous locations in the event that the property being foreclosed is a larger parcel of property. The only requirement is that it be placed in a conspicuous location. Further, although the

Under all the circumstances, the Hutchisons were provided with due process before their interest in the disputed property was foreclosed upon. Notice of the foreclosure was properly given under MCL 211.78i(2) and (3). Although the notice was not actual notice, constructive notice is sufficient and exists in this case. See *2 Crooked Creek, LLC v Cass Co Treasurer*, 329 Mich App 22, 49-51; 941 NW2d 88 (2019) (holding that published notice of a pending foreclosure in a local newspaper for three consecutive weeks is sufficient to establish constructive notice by publication, and stating that posting notice of the foreclosure in a conspicuous manner on the property to be foreclosed is also sufficient to establish constructive notice). Accordingly, any interest that the Hutchisons acquired in the disputed strip of land via adverse possession or acquiescence was extinguished. See MCL 211.78k(6)-(7). See also MCL 211.78*l* (noting that if the owner of a recorded or unrecorded interest in property did not receive *any* notice of a foreclosure, then the owner may bring a claim for monetary damages only).

Finally, the Hutchisons argue that the trial court should have addressed their claim for a prescriptive easement. They assert that their easement was not extinguished because it was "visible." MCL 211.78k(5)(e) provides that "all existing recorded and unrecorded interests in [a property foreclosed under MCL 211.78h] are extinguished, except a visible or recorded easement or right-of-way . . . ." On appeal, the Township contends that because the statute only expressly allows for the preservation of a "visible or recorded easement," the Hutchisons' claimed "prescriptive easement" is barred. We disagree. A prescriptive easement can be a visible easement and it can be a recorded easement because a prescriptive easement merely refers to the method by which an easement over another's property is established. Consequently, if the Hutchisons can establish (1) that they acquired a prescriptive easement to use the property and (2) that the easement is "visible," then their interest in the property is not extinguished by MCL 211.78k(5)(e).

### III. CONCLUSION

Because the Hutchisons received constitutionally adequate notice of the foreclosure, we affirm the trial court's order to the extent that it held that any interest the Hutchisons may have acquired via adverse possession or acquiescence was extinguished by the foreclosure. However, because MCL 211.78k(5)(e) expressly provides that such a foreclosure does not extinguish a visible easement, we reverse the court's order as it relates to the Hutchisons' claim for a prescriptive easement.

---

Hutchisons suggest on appeal that the notice might have been posted, not on the property to be foreclosed, but upon a neighboring property, that contention is not supported by the record. Instead, the notice of property visit indicating that a county official visited the property via Williamson Road contains a picture of a signpost with a notice of the foreclosure prominently displayed. Above the picture is the caption "Parcel Picture."

Affirmed in part, reversed in part, and remanded for further proceedings. Neither party having prevailed in full, no taxable costs are awarded. MCR 7.219(A). We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Michael J. Kelly
/s/ Mark T. Boonstra