*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

THOMAS GILLIS,

Plaintiff-Appellant,

UNPUBLISHED
April 11, 2019

v

OAKLAND COUNTY TREASURER,

Defendant-Appellee.

No. 343958
Court of Claims
LC No. 17-000022-MZ

Before: SWARTZLE, P.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

Plaintiff appeals as of right an order granting summary disposition under MCR 2.116(C)(10) in defendant's favor. Plaintiff challenges the adequacy of defendant's notification efforts regarding foreclosure on plaintiff's tax-delinquent property under the notice provisions of the General Property Tax Act (GPTA), MCL 211.1 *et seq.*, in addition to contesting the trial court's conclusion that notice was constitutionally adequate. We affirm.

## I. BACKGROUND

Plaintiff testified that he purchased the subject property at 221 Crediton Street in Lake Orion, Michigan, in the fall of 2003. He stated that he and his family began living at 527 Tanview Drive in Oxford, Michigan, in the spring of 2004. The deed and the tax records for 221 Crediton listed 527 Tanview as plaintiff's address, and plaintiff agreed that he received tax bills for 221 Crediton at 527 Tanview for years and paid them. Plaintiff testified that he and his family lived in Florida from 2009 to 2014 in a home that he described as a summer home when he purchased it. In 2012, while plaintiff was on the PGA Tour, a management company in Cleveland, Ohio, managed plaintiff's properties, including paying taxes on 221 Crediton. But the 2012 taxes for 221 Crediton were not paid.

In June 2013, defendant mailed notices of property tax delinquency both to the occupant at 221 Crediton and to plaintiff at 527 Tanview. The record contains no indication that either of these notices was returned as undeliverable. In August 2013, defendant mailed second notices of property tax delinquency both to the occupant at 221 Crediton and to plaintiff at 527 Tanview. The notice mailed to 221 Crediton was returned to defendant as undeliverable in September

2013, while the notice mailed to plaintiff at 527 Tanview was not returned. The 2013 and 2014 tax records for 221 Crediton continued to list plaintiff's mailing address as 527 Tanview. Plaintiff testified that he and his family moved to 529 Central Drive in Lake Orion, Michigan, in 2014, although it is not clear when in 2014 they moved. In February 2014, defendant mailed another notice of property tax delinquency to the occupant at 221 Crediton and to plaintiff at 527 Tanview. The notice mailed to plaintiff at 527 Tanview was later returned to defendant as undeliverable. A title search conducted in May 2014 on 221 Crediton continued to show that plaintiff, with the address of 527 Tanview, was the owner. The title search also showed that Raymond and Dorothy Webster had a drain easement on 221 Crediton recorded in 1974.

William Grant, a process server with Rancilio and Associates, stated that he personally visited both 221 Crediton and 527 Tanview as defendant's agent in November 2014. Grant testified that 221 Crediton was unoccupied and contained a single structure that looked like a storage shed, and he posted notice on the front wall of the property. Grant also discovered that 527 Tanview was occupied; however, he was not able to make contact with an occupant of the property, so he posted notice on the front door. In December 2014, defendant mailed final notices to the occupant at 221 Crediton and to plaintiff at 527 Tanview. Both notices were returned as undeliverable. Defendant subsequently published notice in the Oakland Press twice in December 2014 and once in January 2015. The published notice listed the address, 221 Crediton, and the parcel identification number, but it listed the names of Raymond and Dorothy Webster instead of plaintiff's name. The Oakland Circuit Court entered a judgment of foreclosure on the subject property in February 2015, and defendant conveyed the property to a new owner in August 2015.

In January 2017, plaintiff filed a complaint in the Court of Claims seeking monetary damages under MCR 211.78*l*, alleging that he was not properly notified of the tax delinquency and impending foreclosure in violation of the GPTA and his due-process rights and that defendant was liable under the Takings Clause. Defendant moved for summary disposition under MCR 2.116(C)(8) with respect to the Takings Clause claim and under MCR 2.116(C)(10) with respect to the issue of notice, arguing that defendant's notification efforts complied with the GPTA and comported with minimum due-process requirements. Acknowledging that defendant erred by failing to list plaintiff's name in the published notice, the trial court nonetheless concluded that defendant did not violate plaintiff's due-process rights.

## II. DISCUSSION

This Court reviews de novo a trial court's grant of summary disposition. *River Investment Group, LLC v Casab*, 289 Mich App 353, 355; 797 NW2d 1 (2010). Questions of statutory interpretation are reviewed de novo, *In re Petition by Wayne Co Treasurer*, 265 Mich App 285, 290; 698 NW2d 879 (2005), as are constitutional claims, *Gillie v Genesee Co Treasurer*, 277 Mich App 333, 344; 745 NW2d 137 (2007).

Initially, we need not resolve plaintiff's argument that the allegations in the complaint conformed to MCL 211.78*l* because the trial court did not dismiss the complaint under MCR 2.116(C)(8) for this reason. In addition, we decline to address plaintiff's arguments that defendant did not comply with the statutory notice requirements because the trial court assumed that defendant made an error before concluding that defendant did not violate plaintiff's right to

due process. MCL 211.78(2) subordinates the GPTA's statutory notice requirements in foreclosure proceedings to constitutional due-process requirements. Consequently, our Supreme Court has declined to review statutory claims in a similar case because the constitutional claim was dispositive. *Sidun v Wayne Co Treasurer*, 481 Mich 503, 510 n 4; 751 NW2d 453 (2008). Further, defendant does not dispute the trial court's ruling that defendant erred by failing to list plaintiff's name in the published notice, as required by MCL 211.78*i*(8)(c). Therefore, the only remaining issue is whether the trial court erred by concluding that defendant's notification efforts complied with due process.

Because defendant's motion for summary disposition on this issue invoked MCR 2.116(C)(10) and because the parties produced several exhibits that went beyond the allegations in plaintiff's complaint, we review the motion under MCR 2.116(C)(10). Summary disposition under MCR 2.116(C)(10) is proper if, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." This Court "must consider all the pleadings and the evidence in the light most favorable to the nonmoving party." *River Investment Group, LLC*, 289 Mich App at 355.

"The federal and state constitutions require that one be given notice and afforded an opportunity to be heard before being deprived of a property interest." *In re Petition by Wayne Co Treasurer*, 265 Mich App at 293. The United States Supreme Court has held that "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Jones v Flowers*, 547 US 220, 225; 126 S Ct 1708; 164 L Ed 2d 415 (2006). The Supreme Court began its analysis by noting that due process does not require actual notice, only " 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Id*. at 226, quoting *Mullane v Central Hanover Bank & Trust Co*, 339 US 306, 314; 70 S Ct 652; 94 L Ed 865 (1950). The government's knowledge that notice was ineffective is a factor to consider when evaluating whether its notification efforts met constitutional requirements. *Jones*, 547 US at 230-231. The Court declined to prescribe what additional steps should be taken when mailed notice is returned as undeliverable, although it hypothesized various steps the state could have taken, stating that "[w]hat steps are reasonable in response to new information depends upon what that new information reveals." *Id*. at 234-235. In addition, the Court cited with approval notice provisions from several states, including Michigan, providing for alternative methods of notice. *Id*. at 228 n 2, 235. The Court concluded that Arkansas's failure to take additional reasonable steps to give the property owner notice of the tax sale after receiving the returned notices violated due process. *Id*. at 238.

Applying *Jones*, 547 US 220, our Supreme Court determined that a property owner's due-process rights were violated when "the county treasurer failed to employ reasonable follow-up methods to notify plaintiff of the proceedings involving her property . . . ." *Sidun*, 481 Mich at 505. Our Supreme Court began by noting that "[a] notification method may be reasonable and constitutional if employing the method is 'reasonably certain to inform those affected,' or, when circumstances do not reasonably permit such notice, if the method employed is not substantially less likely to provide notice than other customary alternative methods." *Id*. at 510, quoting *Mullane*, 339 US at 315. In *Sidun*, 481 Mich at 505-507, the deed to the subject property listed two interested property holders and two addresses, but the county treasurer mailed notice to the

property holders only at the first address, and that notice was returned as undeliverable. Our Supreme Court concluded that the county treasurer's failure to mail notice to the plaintiff at the second address on the deed, which was the plaintiff's address, violated the plaintiff's right to due process. *Id*. at 513-515. Because the plaintiff's address was on the deed, and that deed was in the defendant's possession, the defendant's alternative measures of posting and publishing notice did not correct the constitutional deficiency in the defendant's failure to mail notice to the second address on the deed. *Id*. at 516-517.

First, the GPTA provides for notice by certified mail, with return receipt requested. MCL 211.78(2). In this case, defendant mailed notices to the occupant at 221 Crediton, the subject property facing foreclosure, and to plaintiff at 527 Tanview in June 2013, August 2013, and February 2014. The first time notice mailed to plaintiff at 527 Tanview was returned as undeliverable was in February 2014, so defendant had no reason to question whether plaintiff resided at 527 Tanview until then.

After receiving the returned mail, due process required defendant to take additional reasonable steps. The GPTA specifies a personal visit and personal service on an occupant as the first alternative to notice by mail, if the property is occupied. MCL 211.78*i*(3)(a) though (c). If the county treasurer or his or her agent is unable to meet with an occupant on the property, the county treasurer or agent must post notice on the property. MCL 211.78*i*(3)(d). After receiving the returned mail and before mailing final notices in December 2014, a title search run on 221 Crediton in May 2014 continued to show 527 Tanview as plaintiff's address. In addition, Grant, the process server, confirmed in November 2014 that 527 Tanview was occupied, although he was unable to make contact with an occupant of 527 Tanview. Grant noted that 221 Crediton was unoccupied, and he also posted notice on that property. The United States Supreme Court explained that posting by notice resulted in "a significant chance the occupants will alert the owner, if only because a change in ownership could well affect their own occupancy." *Jones*, 547 US at 235. Therefore, plaintiff has not shown that defendant's continued notification efforts at 527 Tanview, by attempted personal service and by posting, were unreasonable.

Plaintiff criticizes Grant's posting of notice at 221 Crediton because it did not appear to be occupied, while the statute only provides for notice by posting on property that appears occupied. The question is not whether posting notice at 527 Tanview complied with the statute, however, but whether posting notice there was reasonably calculated to provide plaintiff with notice. Grant's posting of notice at the subject property was only one of three efforts Grant made to serve notice, including posting notice at 527 Tanview and attempting to make contact with an occupant of 527 Tanview. Plaintiff's criticism that posting notice at 221 Crediton did not comply with the statute's posting provision does not identify a constitutionally significant error when Grant's posting of the notice at the subject property went beyond that required by the statute.

The final method of service described in the GPTA is publication by notice. MCL 211.78i(5). The published notice must include the name of the person entitled to notice. MCL 211.78*i*(8)(c). In this case, there is no dispute that the published notice did not list plaintiff's name. Notice by publication only becomes relevant, however, when the county treasurer has not been able to ascertain the owner's address. Because defendant reasonably believed that someone was reachable at 527 Tanview, notice by publication was not required.

Moreover, plaintiff's claim that he would have likely learned about the foreclosure if the published notice had listed his name does not establish that the error was constitutionally significant. Commenting on the inefficacy of notice by publication, the United States Supreme Court determined that notice by publication was inadequate in *Jones* because other more effective forms of notice were available. *Jones*, 547 US at 237. Likewise, in *Mullane*, 339 US at 317-320, the Court described notice by publication as a less likely means to inform known beneficiaries of a legal action and stated that it could only constitutionally suffice to provide notice to unknown beneficiaries. In this case, plaintiff supplied two affidavits stating that he would have likely learned about the foreclosure if his name was listed in the published notice. The published notice lists several parcels subject to foreclosure, consistent with the Supreme Court's criticism that "[c]hance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper . . . ." *Mullane*, 339 US at 315. Listing plaintiff's name properly was no guarantee that plaintiff would have learned about the proceeding. Considering the information about the subject property available to defendant, it was reasonable for defendant to believe that Grant's personal visits and posting of notices were more likely to be successful than notice by publication, even if defendant had properly listed plaintiff's name on the published notice.

Plaintiff argues that defendant should have located the tax records for plaintiff's property at 529 Central and discovered that the Cleveland management company was paying the taxes on that house. However, due process does not require the county treasurer to search for other addresses in "other government records such as income tax rolls." *Jones*, 547 US at 235-236. "An open-ended search for a new address . . . imposes burdens on the State significantly greater than" several other options, including notice by regular mail, notice on the " 'occupant' " of the subject property, and notice by posting on the property. *Id*. at 236. Similarly, our Supreme Court has stated that due process does not require "a foreclosing entity to send notice to all addresses that the entity has, or could have, discovered." *Sidun*, 481 Mich at 515. Further, Laura Schmitt, Chief of Tax Administration in the Oakland County Treasurer's Office, testified that defendant's office, under her direction, searched its internal system for other properties with the same owner, but the internal system housed only information about tax-delinquent properties. Schmitt denied that the office typically conducted the type of search that would lead to the tax history of 529 Central Drive with plaintiff listed as the owner, in part because the Township used a different system for its tax records than the treasurer's office, and the treasurer's office's system was not available for the public to search. Accordingly, it is not clear that defendant would have discovered plaintiff's ownership of 529 Central Drive even if defendant had consulted other records.

Moreover, contrary to plaintiff's suggestion, the evidence about plaintiff's residence at 529 Central Drive does not show that defendant's belief that plaintiff would receive notices mailed to 527 Tanview was unreasonable. The tax history for 529 Central Drive that plaintiff provided shows tax payments made on that property since 1999. Yet plaintiff's testimony suggested that he only began residing at 529 Central Drive after leaving Florida in 2014. Additionally, both the May 2014 title search for 221 Crediton and the 2014 tax records for 221 Crediton listed 527 Tanview as plaintiff's address. As our Supreme Court determined the county treasurer should have done in *Sidun*, 481 Mich at 513-515, defendant in this case mailed the notices to plaintiff's address affiliated with the tax-delinquent property, both in the tax records and on the deed for 221 Crediton. Comparing the tax history for 529 Central Drive and 527

-5-

Tanview does not demonstrate that defendant's continued provision of notice by mail to and posting at 527 Tanview was unreasonable. Plaintiff's suggestion that the county treasurer could have discovered plaintiff's other address at 529 Central Drive and the Cleveland, Ohio address listed for 529 Central Drive is not constitutionally significant because it does not explain how defendant's belief that plaintiff was reachable at 527 Tanview was unreasonable. On the contrary, it reflects the type of additional searching and mailing criticized by both the United States and Michigan Supreme Courts. In short, plaintiff's argument required defendant to disregard records for the subject property, discover that plaintiff owned other property, and conclude that an address in Cleveland, Ohio, was the better address at which to reach plaintiff.

Lastly, plaintiff contends that defendant could have discovered a better address for plaintiff using LexisNexis. However, a June 2015 LexisNexis report stated that the probable current address for plaintiff was 527 Tanview, listing the dates November 2000 to June 2015 underneath it. The LexisNexis report's conclusion that 527 Tanview was plaintiff's probable current address demonstrates the flaw in plaintiff's argument, the limits of technology, and the reasonableness of defendant's efforts to serve notice by various methods at 527 Tanview. The report also lists two addresses in Ohio, one address in Florida, and two addresses in Lake Orion, Michigan, for the relevant time period related to the foreclosure proceeding. The address in Cleveland, Ohio, annotated as The Ancora Group, has August 2014 to June 2015 underneath it. The second address in Beachwood, Ohio, lists December 2010 to October 2014 as the relevant dates. The third address in Jupiter, Florida, had the dates September 2009 to September 2014 underneath it. The 529 Central Drive address had the dates November 2006 to September 2014 underneath it. Therefore, according to the LexisNexis report, the 527 Tanview address outlasted the 529 Central Drive address. Plaintiff's arguments proceed through the lens of his own knowledge of where he lived and when, and plaintiff does not identify what on the LexisNexis report rendered defendant's efforts to serve him at 527 Tanview unreasonable. Information about an individual may be readily available with a few keystrokes and clicks, but it does not follow that sifting through the currency and reliability of that information or providing notice to every possible address is constitutionally required. In conclusion, plaintiff has not shown that defendant's notification efforts were constitutionally inadequate.

Affirmed.

/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron