# Syllabus

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

2 CROOKED CREEK, LLC v CASS COUNTY TREASURER

Docket No. 159856. Argued on application for leave to appeal October 7, 2020. Decided March 16, 2021.

2 Crooked Creek, LLC (2CC) and Russian Ferro Alloys, Inc. (RFA) filed an action in the Court of Claims against the Cass County Treasurer, seeking to recover monetary damages under MCL 211.78*l* of the General Property Tax Act (the GPTA), MCL 211.1 *et seq.*, in connection with defendant's foreclosure of certain property. In 2010, 2CC purchased property for development in Cass County. 2CC failed to pay the 2011 real-property taxes and, in 2013, forfeited the property to defendant. From January through May 2013, defendant's agent, Title Check, LLC (Title Check), mailed via first-class and certified mail a series of notices to the address listed in the deed. These notices apprised 2CC of the unpaid property taxes, forfeiture, and possibility of foreclosure. The certified mail was returned as "Unclaimed—Unable to Forward," but the first-class mail was not returned. Meanwhile, 2CC constructed a home on the property, obtaining a mortgage for the construction from RFA. On June 18, 2013, Katelin MaKay, a land examiner working for Title Check, visited the property; determined it to be occupied; and being unable to personally meet with any occupant, posted notice of the show-cause hearing and judicial-foreclosure hearing on a window next to the front door of the newly constructed home. Title Check continued its notice efforts through the rest of 2013 and into 2014, mailing various notices as well as publishing notice in a local newspaper for three consecutive weeks. After no one appeared on 2CC's behalf at the January 15, 2014 show-cause hearing or the February 18, 2014 judicial-foreclosure hearing, the Cass Circuit Court, Michael E. Dodge, J., entered the judgment of foreclosure. The property was not redeemed by the March 31, 2014 deadline, and fee simple title vested with defendant. 2CC learned of the foreclosure a few weeks later. In July 2014, 2CC moved to set aside the foreclosure judgment on due-process grounds. These efforts failed, however, because the circuit court concluded that defendant's combined efforts of mailing, posting, and publishing notice under the GPTA provided 2CC with notice sufficient to satisfy the requirements of due process. 2CC appealed. In an unpublished per curiam opinion issued on March 8, 2016 (Docket No. 324519), the Court of Appeals, METER, P.J., and BOONSTRA and RIORDAN, JJ., affirmed. At the same time 2CC moved to set aside the foreclosure judgment, it filed a separate action in the Court of Claims for monetary damages under MCL 211.78*l*(1), alleging that it had not received any notice required under the GPTA. Defendant moved for summary disposition under MCR 2.116(C)(7). The Court of Claims, MICHAEL J. TALBOT, J., denied the motion and held a bench trial. At the close of 2CC's proofs, the court granted an involuntary dismissal in favor of defendant, holding, in relevant part, that 2CC had received at least constructive notice of the foreclosure proceedings when MaKay

posted notice on the home at a time when 2CC "was exercising dominion and control over the property by contracting for the construction of a home on the property." 2CC appealed as of right, and the Court of Appeals, SAWYER, P.J., and CAVANAGH and K. F. KELLY, JJ., affirmed. 329 Mich App 22 (2019). 2CC sought leave to appeal in the Supreme Court, and the Supreme Court ordered oral argument on the application limited to 2CC's claim for monetary damages under MCL 211.78*l*(1). 505 Mich 865 (2019).

In an opinion by Justice ZAHRA, joined by Chief Justice MCCORMACK and Justices BERNSTEIN, CLEMENT, and CAVANAGH, the Supreme Court, in lieu of granting leave to appeal, *held*:

MCL 211.78*l*(1) provided that if a judgment for foreclosure was entered under MCL 211.78k of the GPTA and all existing recorded and unrecorded interests in a parcel of property were extinguished as provided in MCL 211.78k, the owner of any extinguished recorded or unrecorded interest in that property who claimed that he or she did not receive any notice required under the GPTA was not permitted to bring an action for possession of the property against any subsequent owner but could only bring an action to recover monetary damages. By using the term "any," the Legislature intended to encompass all types of notice required under the GPTA, not just actual notice. The use of "actual notice" in other provisions as opposed to the use of "any notice" in MCL 211.78*l*(1) indicated that the Legislature likely intended to differentiate between "actual notice" and "any notice." Further, the legal definition of "notice" is not constrained to situations in which a person receives actual notice; a person may be deemed to have received notice regardless of whether actual awareness exists. The Court of Appeals erred by suggesting that the remedy recognized in *In re Treasurer of Wayne Co for Foreclosure (Perfecting Church)*, 478 Mich 1 (2007), of setting aside a foreclosure judgment on due-process grounds was mutually exclusive from the monetary-damages remedy provided in MCL 211.78*l*(1). MCL 211.78(2) specifically sets forth the Legislature's intent to comply with the minimum requirements of due process without granting additional rights that might interfere with the foreclosure process, while MCL 211.78*l*(1) represented the Legislature's attempt to limit all remedies available under the GPTA to monetary damages. Reading these two provisions together, the Legislature, in enacting the 1999 amendments of the GPTA, intended to provide monetary damages under MCL 211.78*l*(1) only to those former property owners who did not receive constitutionally adequate notice. Although MCL 211.78*l*(1) provided "a damages remedy that [was] not constitutionally required," a due-process violation for lack of notice still served as a necessary predicate for such a claim. Accordingly, property owners who received constitutionally adequate notice sufficient to satisfy the minimum requirements of due process under the GPTA would have necessarily received the notice required under the GPTA and, thus, could not sustain an action for monetary damages under MCL 211.78*l*(1). In this case, because 2CC had already been adjudicated to have received such notice, 2CC could not establish that it did not receive any notice required under the GPTA. Accordingly, the Court of Appeals correctly dismissed 2CC's action for monetary damages under MCL 211.78*l*(1), albeit for the wrong reasons.

Affirmed.

Justice VIVIANO, concurring in the judgment, agreed with the majority that plaintiffs could not invoke MCL 211.78*l*(1), but he would not have decided the question whether a plaintiff who received constitutionally sufficient notice has thereby received "any notice required under this act"

for purposes of MCL 211.78*l*(1).  To decide whether plaintiffs failed to receive "any notice required under this act" would involve determining whether plaintiffs received the notice required under the GPTA's numerous notice provisions, and if any of those provisions required actual notice and that notice was not received, then the failure to receive actual notice might have satisfied MCL 211.78*l*(1), enabling a monetary-damages claim.  However, plaintiffs did not present that argument.  Plaintiffs therefore failed to show that MCL 211.78*l*(1) allowed claims whenever taxpayers did not receive "actual notice."

Justice WELCH did not participate in the disposition of this case because the Court considered it before she assumed office.

# OPINION

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED March 16, 2021

STATE OF MICHIGAN

SUPREME COURT

2 CROOKED CREEK, LLC, and RUSSIAN
FERRO ALLOYS, INC.,

      Plaintiffs-Appellants,

v                             No. 159856

CASS COUNTY TREASURER,

      Defendant-Appellee.

BEFORE THE ENTIRE BENCH (except WELCH, J.)

ZAHRA, J.

In this appeal, we address the monetary-damages provision of the General Property Tax Act (GPTA), MCL 211.1 *et seq*., which, until recently, permitted an owner of an interest in real property extinguished by tax foreclosure to recover monetary damages upon

a showing "that he or she did not receive any notice required under [the GPTA] . . . ."[1] Plaintiff 2 Crooked Creek, LLC (2CC) contends that the phrase "any notice" means "actual notice" and that the statute permitted recovery of monetary damages for anything short of receiving actual notice.[2] We conclude that the phrase "any notice" as it was used in MCL 211.78*l*(1) was not limited to actual notice but, instead, encompassed all constitutionally sufficient notice. Thus, while we affirm the result reached by the Court of Appeals, we clarify that the monetary-damages remedy in MCL 211.78*l*(1) provided an alternative avenue of relief available *only* to those former property owners and interest holders who did not receive constitutionally adequate notice of the foreclosure proceedings as required under the GPTA.[3] Therefore, in order to bring a claim for monetary damages under MCL 211.78*l*(1) for not having received "any notice" under the GPTA, the claimant must first establish that notice did not satisfy the minimum requirements of due process.

---

[1] MCL 211.78*l*(1). The Legislature recently amended the GPTA and, in doing so, eliminated the relevant language at issue in this appeal. See 2020 PA 256, effective December 22, 2020. This opinion only interprets the preamendment version of the GPTA, and all citations of the GPTA are to the former version of the act.

[2] We limit our review in this case to 2CC's claim for monetary damages under MCL 211.78*l*(1). *2 Crooked Creek LLC v Cass Co Treasurer*, 505 Mich 865 (2019). We agree with the lower courts' resolution of the claim for monetary damages advanced by plaintiff Russian Ferro Alloys, Inc. (RFA), the holder of a mortgage on the property recorded after the certificate of forfeiture was recorded, and we decline to address it further.

[3] We recognize that this remedy was not exclusive to the former owner of the tax-foreclosed property but also included "the owner of any extinguished recorded or unrecorded interest in that property . . . ." MCL 211.78*l*(1). For ease of reference, however, we refer to a person bringing a claim for monetary damages under MCL 211.78*l*(1) as a claimant.

2

## I. BASIC FACTS AND PROCEEDINGS

In 2010, 2CC purchased property for development in Cass County. 2CC failed to pay the 2011 real-property taxes and, in 2013, forfeited the property to defendant, the Cass County Treasurer. From January through May 2013, defendant's agent, Title Check, LLC (Title Check), mailed via first-class and certified mail a series of notices to the address listed in the deed. These notices apprised 2CC of the unpaid property taxes, forfeiture, and possibility of foreclosure. The certified mail was returned as "Unclaimed—Unable to Forward," but the first-class mail was not returned.[4] Meanwhile, 2CC constructed a home on the property, obtaining a mortgage for the construction from Russian Ferro Alloys, Inc.[5]

On June 18, 2013, Katelin MaKay, a land examiner working for Title Check, visited the property; determined it to be occupied; and being unable to personally meet with any occupant, posted notice of the show-cause hearing and judicial-foreclosure hearing on a

---

[4] The address listed on the property's deed is the resident address of 2CC's representative, Sergei Antipov. 2CC is managed by KAVA Management Company, LLC, which is, in turn, managed by Antipov. The recorded deed listed 2CC's address as 36 Bradford Lane, Chicago, IL 60523. Although this zip code is correct, the city should have been identified as Oak Brook, not Chicago. Title Check mailed the first notice to the Chicago address, but it was later delivered to the correct address in Oak Brook. All subsequently mailed notices were sent to the correct address in Oak Brook. Antipov, however, had apparently moved in June 2011, and he claims that he never received the mailed notices.

[5] While RFA obtained its mortgage on May 28, 2013, it did not record that mortgage until July 10, 2013—after defendant recorded the certificate of forfeiture on April 12, 2013, and after Title Check completed its title search on June 3, 2013. Title Check's title search revealed only the deed, the real estate agreement, an easement, and the certificate of forfeiture.

window next to the front door of the newly constructed home.[6] Title Check continued its notice efforts through the rest of 2013 and into 2014, mailing various notices as well as publishing notice in a local newspaper for three consecutive weeks. After no one appeared on 2CC's behalf at the January 15, 2014 show-cause hearing or the February 18, 2014 judicial-foreclosure hearing, the Cass Circuit Court entered the judgment of foreclosure. The property was not redeemed by the March 31, 2014 deadline, and fee simple title vested with defendant. 2CC learned of the foreclosure a few weeks later.

In July 2014, 2CC moved to set aside the foreclosure judgment on due-process grounds. These efforts failed, however, because the circuit court concluded, and the Court of Appeals agreed, that defendant's combined efforts of mailing, posting, and publishing notice under the GPTA provided 2CC with notice sufficient to satisfy the requirements of due process.[7] At the same time 2CC moved to set aside the foreclosure judgment, it filed

---

[6] MaKay took a photograph of the posted notice and attached the photograph to her inspection worksheet. James Frye, the president of the development company working on the home, later submitted an affidavit stating that he had seen the notice and had contacted a representative of 2CC. Antipov and Douglas Anderson, 2CC's registered agent and president of RFA, filed affidavits refuting Frye's affidavit. Each averred that Frye knew Antipov and Anderson were 2CC's only representatives and that Frye never contacted either of them about the posted notice. Further, 2CC filed a lawsuit against Frye, alleging that he removed the posted foreclosure notice and failed to inform 2CC of the foreclosure. Frye was granted summary disposition in that case. See *2 Crooked Creek LLC v Frye*, unpublished per curiam opinion of the Court of Appeals, issued March 12, 2020 (Docket No. 341274) (affirming the trial court's grant of summary disposition in favor of Frye and the company that constructed the home for 2CC).

[7] *In re Petition of Cass Co Treasurer for Foreclosure*, unpublished per curiam opinion of the Court of Appeals, issued March 8, 2016 (Docket No. 324519), pp 1, 8-9, lv den 500 Mich 882 (2016), cert den ___ US ___; 138 S Ct 422 (2017).

this separate action in the Court of Claims for monetary damages under MCL 211.78*l*(1), alleging that it had not received any notice required under the GPTA. After denying defendant's motion for summary disposition under MCR 2.116(C)(7) (prior judgment),[8] the Court of Claims held a bench trial. At the close of 2CC's proofs, the court granted an involuntary dismissal in favor of defendant, holding, in relevant part, that 2CC had received at least constructive notice of the foreclosure proceedings when MaKay posted notice on the home at a time when 2CC "was exercising dominion and control over the property by contracting for the construction of a home on the property."[9] 2CC appealed as of right, and the Court of Appeals affirmed in an opinion later approved for publication.[10] 2CC filed an application for leave to appeal in this Court. In lieu of granting leave, we ordered oral argument on the application limited to the issue of

---

[8] The Court of Claims concluded that 2CC's action was not barred by principles of res judicata and collateral estoppel because whether a claimant seeking monetary damages under MCL 211.78*l*(1) received any notice required under the GPTA was a "separate inquiry from whether the foreclosing governmental unit satisfied due process in giving notice of the foreclosure." *2 Crooked Creek, LLC v Cass Co Treasurer*, unpublished opinion of the Court of Claims, issued June 29, 2017 (Docket No. 14-000181-MZ), pp 3-5. Defendant appealed that decision to the Court of Appeals, which declined to address it. *2 Crooked Creek, LLC v Cass Co Treasurer*, 329 Mich App 22, 27 n 1, 57; 941 NW2d 88 (2019). For the reasons stated in this opinion, we conclude that defendant was entitled to summary disposition under MCR 2.116(C)(7). See p 18 & note 47 of this opinion.

[9] *2 Crooked Creek, LLC v Cass Co Treasurer*, unpublished opinion of the Court of Claims, issued January 22, 2018 (Docket No. 14-000181-MZ), p 16. The Court of Claims found incredible Antipov's claim that he did not receive any of the mailed notices. The court also concluded that 2CC provided no evidence of its damages. The Court of Appeals did not address these alternative grounds for dismissal and neither do we.

[10] *2 Crooked Creek*, 329 Mich App 22.

5

whether [2CC] (an owner of a property interest that was extinguished by tax foreclosure after being accorded notice sufficient to satisfy minimum due process requirements) can sustain an action to recover monetary damages pursuant to MCL 211.78*l*(1) by claiming that it "did not receive any notice required under this act" due to a lack of actual notice and, specifically, whether constructive notice is sufficient to fall within the confines of "any notice" under MCL 211.78*l*(1) such that 2CC can be charged with knowledge of the notice that was posted to the subject property during a time when 2CC was exercising control and dominion over it. See *In re Treasurer of Wayne Co for Foreclosure (Perfecting Church)*, 478 Mich 1[; 732 NW2d 458] (2007).[11]

## II. STANDARD OF REVIEW AND APPLICABLE RULES OF STATUTORY INTERPRETATION

The issue presented in this case is one of pure statutory interpretation, which this Court reviews de novo.[12] This Court's role in interpreting statutory language is to "ascertain the legislative intent that may reasonably be inferred from the words in a statute."[13] "In doing so, courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that renders nugatory or surplusage any part of a statute."[14] "Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are

---

[11] *2 Crooked Creek*, 505 Mich at 865.

[12] *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d 117 (2012).

[13] *People v Couzens*, 480 Mich 240, 249; 747 NW2d 849 (2008).

[14] *Hannay v Dep't of Transp*, 497 Mich 45, 57; 860 NW2d 67 (2014) (quotation marks, citation, and brackets omitted).

used."[15]  "When the statutory language is clear and unambiguous, judicial construction is not permitted and the statute is enforced as written."[16]

### III.  ANALYSIS

### A.  THE GPTA AND MCL 211.78*l*

The GPTA authorizes a foreclosing governmental unit to seize tax-delinquent property through foreclosure and to then sell it to recoup unpaid real-property taxes, penalties, interest, and fees.  Before the foreclosure judgment is entered, the GPTA provides various procedural safeguards to afford those with an interest in the property notice of the foreclosure by mail, by publication, and by a personal visit to the property,[17] and it provides an opportunity to be heard via a show-cause hearing and a judicial-foreclosure hearing.[18]  Once the foreclosure judgment enters and the redemption and appeal periods expire, fee simple title to the property vests in the foreclosing governmental unit.[19]  Once entered, circuit courts generally may not alter a judgment of foreclosure.

---

[15] *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156; 802 NW2d 281 (2011) (citations omitted).

[16] *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 199; 895 NW2d 490 (2017).

[17] See MCL 211.78i.  Of course, the GPTA also requires that various notices be sent to the property owner when taxes are returned as delinquent and when the property is forfeited to the county treasurer.  See MCL 211.78a through MCL 211.78c; MCL 211.78f.

[18] See MCL 211.78j; MCL 211.78k.  See also MCL 211.78k(5)(f) (requiring the circuit court to make "[a] finding that all persons entitled to notice and an opportunity to be heard have been provided that notice and opportunity").

[19] MCL 211.78k(6).

Nonetheless, MCL 211.78*l*(1) provided divested property owners and interest holders who claim they did not receive any notice required under the GPTA an action for monetary damages:

> If a judgment for foreclosure is entered under section 78k and all existing recorded and unrecorded interests in a parcel of property are extinguished as provided in section 78k, the owner of any extinguished recorded or unrecorded interest in that property who claims that he or she did not receive any notice required under this act shall not bring an action for possession of the property against any subsequent owner, but may only bring an action to recover monetary damages as provided in this section.[20]

2CC argues that it is entitled to monetary damages under MCL 211.78*l*(1) because "any notice" means "actual notice," such that the statute provided relief when a claimant received anything less than actual notice of the foreclosure proceedings. By using the term "any," however, it is clear that the Legislature intended to encompass all types of notice required under the GPTA, not just actual notice.[21] Indeed, a review of other provisions of

---

[20] MCL 211.78*l*(2) provided the Court of Claims with original and exclusive jurisdiction for a claim of monetary damages. MCL 211.78*l*(3) set out a two-year statutory period of limitations after the foreclosure judgment is entered. MCL 211.78*l*(4) limited the amount of monetary damages recoverable to the fair market value of the interest held in the property as of the date the judgment of foreclosure is entered, less any taxes, interest, penalties, and fees owed on the property as of that date. Finally, MCL 211.78*l*(5) prohibited the transfer of the right to sue for monetary damages except by testate or intestate succession.

[21] See *Random House Webster's College Dictionary* (1999) (defining "any" as "**1.** one, a, an, or some; one or more without specification or identification[.] . . . **2.** whatever or whichever it may be[.] . . . **3.** in whatever quantity or number, great or small; some[.] **4.** every; all[.]); *People v Harris*, 495 Mich 120, 131; 845 NW2d 477 (2014) (explaining that " 'any' is commonly understood to encompass a wide range of things" such that "it is difficult to imagine how the Legislature could have cast a broader net given the use of the word[] 'any' "), citing *People v Lively*, 470 Mich 248, 253-254; 680 NW2d 878 (2004).

8

the GPTA demonstrates that the Legislature did refer to "actual notice" in some instances.[22] The use of "actual notice" in other provisions as opposed to the use of "any notice" in MCL 211.78*l*(1) indicates that the Legislature likely intended to differentiate between "actual notice" and "any notice."[23] Further, the legal definition of "notice" is not constrained to situations in which a person receives actual notice; a person may be deemed to have received notice regardless of whether actual awareness exists.[24]

2CC tries to rebut these commonsense conclusions by focusing on the word "receive," arguing that because other forms of notice act as a substitute for actual notice, only actual notice can be *received*.[25] The word "receive" is defined as follows:

---

[22] See, e.g., MCL 211.78k(5)(f)(*i*) and (*iii*) (specifically using the terms "actual notice" and "constructive notice" in describing when a person is considered to have been provided notice and an opportunity to be heard).

[23] "When the Legislature uses different words, the words are generally intended to connote different meanings. . . . If the Legislature had intended the same meaning in both statutory provisions, it would have used the same word." *US Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 14; 795 NW2d 101 (2009).

[24] *Black's Law Dictionary* (11th ed) (defining "notice" as "**1.** Legal notification required by law or agreement, or imparted by operation of law as a result of some fact (such as the recording of an instrument); definite legal cognizance, *actual or constructive*, of an existing right or title . . . . **2.** *The condition of being so notified, whether or not actual awareness exists* . . . . **3.** A written or printed announcement") (emphasis added). Resort to a legal dictionary is appropriate when the term in need of interpretation is "a legal term of art . . . that has acquired a peculiar and appropriate meaning in the law." *Hannay*, 497 Mich at 68-69, citing MCL 8.3a. In any event, we recognize the lay definition of "notice" tracks its legal definition. See *Random House Webster's College Dictionary* (1999) (defining "notice" as "**1.** information, warning, or announcement of something impending; notification . . . . **2.** a written or printed statement conveying such information or warning[.] . . . **7.** to become aware of or pay attention to; take notice of; observe").

[25] See *Black's Law Dictionary* (11th ed), p 1277 (defining "actual notice" as "**1.** Notice given directly to, or received personally by, a party. . . . **2.** *Property*. Notice given by open

9

**1.** to take into one's possession (something offered or delivered) . . . . **2.** to have (something) bestowed, conferred, etc. . . . . **3.** to have delivered or brought to one . . . . **4.** to get or be informed of . . . . **5.** to be burdened with; sustain . . . . **6.** to hold, bear, or contain . . . . **7.** to take into the mind; apprehend mentally . . . . **8.** to accept from another, as by hearing . . . .[26]

Clearly then, the plain meaning of "receive" is not limited to actual, physical possession as 2CC suggests; a person can be said to "receive" notice when he or she is "informed of" or "apprehend[s]" the notice.[27]   Accordingly, we agree with the Court of Appeals that 2CC's interpretation of MCL 211.78*l*(1) conflicts with the plain language of the statute.

### B.  *PERFECTING CHURCH*

2CC contends that this Court's decision in *Perfecting Church*[28] supports its position that MCL 211.78*l*(1) permitted recovery of monetary damages for anything less than actual notice.  MCL 211.78*l* was enacted as part of the 1999 amendments of the GPTA.[29]  These

---

possession and occupancy of real property," while defining "constructive notice" as "[n]otice arising by presumption of law from the existence of facts and circumstances that a party had a duty to take notice of . . . ; notice presumed by law to have been acquired by a person and thus imputed to that person").

[26] *Random House Webster's College Dictionary* (1999).

[27] *Id*.  See also *Black's Law Dictionary* (11th ed) (defining "notice") ("A person has notice of a fact or condition if that person (1) has actual knowledge of it; (2) has received information about it; (3) has reason to know about it; (4) knows about a related fact; or (5) is considered as having been able to ascertain it by checking an official filing or recording.").

[28] *Perfecting Church* 478 Mich 1.

[29] 1999 PA 123.

10

amendments reflect a legislative effort to streamline the tax-foreclosure process, "to provide finality to foreclosure judgments and to quickly return property to the tax rolls."[30] Two provisions of the GPTA were key in effectuating this scheme: MCL 211.78k(6), which deprives the circuit court of jurisdiction to set aside a foreclosure judgment after the redemption and appeal periods expire, and MCL 211.78*l*, which limited all aggrieved property owners and interest holders to the single remedy of monetary damages. In *Perfecting Church*, we explained how these provisions worked together:

> If a property owner does not redeem the property or appeal the judgment of foreclosure within 21 days, then MCL 211.78k(6) deprives the circuit court of jurisdiction to alter the judgment of foreclosure. MCL 211.78k(6) vests absolute title in the foreclosing governmental unit, and if the taxpayer does not redeem the property or avail itself of the appeal process in [MCL 211.78k(7)], then title "shall not be stayed or held invalid . . . ." *This language reflects a clear effort to limit the jurisdiction of courts so that judgments of foreclosure may not be modified other than through the limited procedures provided in the GPTA. The only possible remedy for such a property owner would be an action for monetary damages based on a claim that the property owner did not receive any notice* [*under MCL 211.78*l]. In the majority of cases, this regime provides an appropriate procedure for foreclosing property because the statute requires notices that are consistent with minimum due process standards.[31]

---

[30] *Perfecting Church*, 478 Mich at 4; MCL 211.78(1) ("The legislature finds that there exists in this state a continuing need to strengthen and revitalize the economy of this state and its municipalities by encouraging the efficient and expeditious return to productive use of property returned for delinquent taxes."). See also *Rafaeli, LLC v Oakland Co*, 505 Mich 429, 442 n 10; 952 NW2d 434 (2020) ("The former foreclosure process could extend many years, causing properties to deteriorate and become clouded with poor title, which often led to title-insurance companies refusing to insure these properties. As a result, the Legislature overhauled the GPTA in 1999. The current scheme expedites the foreclosure process, thereby reducing the amount of abandoned, tax-delinquent properties within the state.") (citation omitted).

[31] *Perfecting Church*, 478 Mich at 8 (emphasis altered).

11

We further recognized that the monetary-damages remedy in MCL 211.78*l* was the only remedy available to property owners after the redemption and appeal periods expired and that the GPTA did not provide an exception for property owners deprived of notice sufficient to satisfy due process.

Through these provisions, the Legislature attempted to insulate foreclosure judgments from becoming undone by eliminating a property owner's ability to recoup the property after the judgment was finalized and by limiting the owner's remedy to monetary damages. Our decision in *Perfecting Church* held that this attempt was unconstitutional as applied to those property owners deprived of due process, explaining:

> [T]he statute permits a foreclosing governmental unit to ignore completely the mandatory notice provisions of the GPTA, seize absolute title to a taxpayer's property, and sell the property, leaving the circuit court impotent to provide a remedy for the blatant deprivation of due process. That interpretation, allowing for the deprivation of due process without any redress would be patently unconstitutional. Unfortunately, as noted above, the plain language of the statute simply does not permit a construction that renders the statute constitutional because the statute's jurisdictional limitation encompasses all foreclosures, including those where there has been a failure to satisfy minimum due process requirements, *as well as those situations in which constitutional notice is provided, but the property owner does not receive actual notice.* In cases where the foreclosing governmental unit complies with the GPTA notice provisions, MCL 211.78k is not problematic. Indeed, MCL 211.78*l* provides in such cases a damages remedy that is not constitutionally required. However, in cases where the foreclosing entity fails to provide *constitutionally adequate notice*, MCL 211.78k permits a property owner to be deprived of the property without due process of law. Because the Legislature cannot create a statutory regime that allows for constitutional violations with no recourse, that portion of the statute purporting to limit the circuit court's jurisdiction to modify judgments of

12

foreclosure is unconstitutional and unenforceable as applied to property owners who are denied due process.[32]

While our analysis in *Perfecting Church* described the GPTA's constitutional infirmity only in terms of the jurisdictional limitation on circuit courts provided in MCL 211.78k(6), the limited monetary-damages remedy provided in MCL 211.78*l*(1) was an indispensable part of the Legislature's unconstitutional scheme.[33]

Citing *Perfecting Church*, 2CC argues that this Court has previously recognized that a former property owner who receives constitutionally adequate notice, but not actual notice, may sustain an action for monetary damages under MCL 211.78*l*(1) for not having received "any notice" under the GPTA. Admittedly, *Perfecting Church* is not a model of clarity as to when an owner could have made a claim for those monetary damages. But that issue was not squarely before us in *Perfecting Church*. Unlike 2CC, the property owner in *Perfecting Church* only sought the return of its property by filing a motion for

---

[32] *Id*. at 10-11 (emphasis added).

[33] See *Rafaeli*, 505 Mich at 452-453 n 50 ("The GPTA, at one point, limited property owners to a damages action under MCL 211.78*l* . . . . Once the judgment of foreclosure was entered and the former property owner's interest in the property was extinguished, the former owner could not bring an action for possession. But, in [*Perfecting Church*], this Court held that limitation unconstitutional. Thus, property owners can now file a motion to set aside their judgment of foreclosure if the foreclosing governmental unit failed to comply with due process when providing notice to owners."). See also Smith, *Foreclosure of Real Property Tax Liens Under Michigan's New Foreclosure Process*, 29 Mich Real Prop Rev 51, 52 (2002) ("The legislature sought to address th[e] problem [created by the former tax-foreclosure process] by limiting the remedy available to former owners who lost property through tax foreclosure to an action for money damages in the Court of Claims. This remedy is at the heart of the legislative plan to make title to foreclosed property insurable by eliminating the possibility of foreclosed property being reacquired by the delinquent former owners or interest holders through the courts.").

relief from the foreclosure judgment entered in the circuit court; it did not file an action in the Court of Claims seeking monetary damages under MCL 211.78*l*(1). The sine qua non of our holding in *Perfecting Church* was that the jurisdictional limitation on a circuit court's ability to set aside finalized foreclosure judgments in MCL 211.78k(6), together with the GPTA's limited avenue of relief in the form of monetary damages in MCL 211.78*l*(1), rendered these provisions unconstitutional as applied to those property owners deprived of due process. Because the property owner in *Perfecting Church* was deprived of notice sufficient to satisfy due process, it was permitted to set aside the foreclosure judgment.[34] Thus, our brief discussion in *Perfecting Church* regarding the type of notice required to sustain an action for monetary damages under MCL 211.78*l*(1) is obiter dicta.[35] To the extent this Court in *Perfecting Church* opined on the meaning of "any notice" in MCL 211.78*l*(1), it was unnecessary to the determination of the matter at hand.

### C. ALTERNATIVE REMEDY

Having clarified that the phrase "any notice" as it was used in MCL 211.78*l*(1) was not limited to actual notice, we further specify when a claimant may sustain an action for monetary damages under the GPTA for not having received "any notice." As an initial matter, the Court of Appeals below erred by suggesting that the remedy recognized in

---

[34] *Perfecting Church*, 478 Mich at 8-11.

[35] *People v Peltola*, 489 Mich 174, 190 n 32; 803 NW2d 140 (2011) ("Obiter dicta are not binding precedent. Instead, they are statements that are unnecessary to determine the case at hand and, thus, lack the force of an adjudication.") (quotation marks and citation omitted).

14

*Perfecting Church* of setting aside a foreclosure judgment on due-process grounds is mutually exclusive from the monetary-damages remedy provided in MCL 211.78*l*(1).[36] This Court in *Perfecting Church* did not find the GPTA's scheme unconstitutional as a whole, and we did not strike MCL 211.78*l*(1) as an available remedy. Instead, former property owners and interest holders who did not receive constitutionally adequate notice of a foreclosure had two alternative remedies available to them after the judgment of foreclosure entered and the redemption and appeal periods expired: they could either (1) bring an action in the circuit court to set aside the judgment of foreclosure according to *Perfecting Church*[37] or (2) bring an action for monetary damages under MCL 211.78*l* to recover "the fair market value of the property" as of the date the judgment of foreclosure was entered, "less any taxes, interest, penalties, and fees owed on the property as of that date."[38]

For either remedy to apply, however, the former property owner must have established that he or she did not receive constitutionally adequate notice sufficient to satisfy the minimum requirements of due process. Again, to sustain an action for monetary damages under MCL 211.78*l*(1), the claimant was required to show "that he or she did not

---

[36] See *2 Crooked Creek*, 329 Mich App at 49 ("Plaintiffs received due process; had they not, they would not be proceeding for a claim of damages under MCL 211.78*l*. The only issue is whether 2CC received *any* notice.").

[37] *Perfecting Church*, 478 Mich at 10-11. Of course, the remedy recognized in *Perfecting Church*, which is one of constitutional dimensions, remains available to those property owners and interest holders deprived of constitutionally adequate notice. *Id*.

[38] MCL 211.78*l*(4).

receive any notice required under [the GPTA] . . . ." A plain reading of the phrase "any notice" certainly encompasses notice sufficient to satisfy due process.[39] This understanding is entirely consistent with MCL 211.78(2), which provides:

> It is the intent of the legislature that the provisions of this act relating to the return, forfeiture, and foreclosure of property for delinquent taxes satisfy the minimum requirements of due process required under the constitution of this state and the constitution of the United States but that those provisions do not create new rights beyond those required under the state constitution of 1963 or the constitution of the United States. The failure of this state or a political subdivision of this state to follow a requirement of this act relating to the return, forfeiture, or foreclosure of property for delinquent taxes shall not be construed to create a claim or cause of action against this state or a political subdivision of this state unless the minimum requirements of due process accorded under the state constitution of 1963 or the constitution of the United States are violated.

"As an overall principle, MCL 211.78(2) provides that the adequacy of notice under the [GPTA] is governed by state and federal due process standards, rather than by specific provisions of the act."[40] Indeed, we have declined to address a plaintiff's allegations that a foreclosing governmental unit violated specific provisions of the GPTA because, "[a]s a practical matter, any remedies available to [a] plaintiff are contingent on her constitutional

---

[39] See pp 8-10 & notes 21-27 of this opinion. See also *Sidun v Wayne Co Treasurer*, 481 Mich 503, 509; 751 NW2d 453 (2008) ("A fundamental requirement of due process in [tax-foreclosure] proceedings is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. . . . [T]he means employed to notify interested parties must be . . . means that one who actually desires to inform the interested parties might reasonably employ to accomplish actual notice. However, due process does not require that a property owner receive actual notice . . . .") (quotation marks, citations, and brackets omitted).

[40] *Republic Bank v Genesee Co Treasurer*, 471 Mich 732, 737; 690 NW2d 917 (2005).

16

claim."[41]  2CC dismisses the significance of MCL 211.78(2), arguing that because MCL 211.78*l*(1) provided a postforeclosure cause of action separate from "the provisions of [the GPTA] relating to the return, forfeiture, and foreclosure of property for delinquent taxes,"[42] a claim for monetary damages under the GPTA was not limited to claims of a lack of minimum due process.  2CC's interpretation of these provisions is overly broad.  MCL 211.78(2) specifically sets forth the Legislature's intent to comply with the minimum requirements of due process without granting additional rights that may interfere with the foreclosure process,[43] while MCL 211.78*l*(1) represented the Legislature's attempt to limit

---

[41] *Sidun*, 481 Mich at 510 n 4, citing MCL 211.78(2).  See also *Sidun*, 481 Mich at 510 n 4 (" 'The failure of the foreclosing governmental unit to comply with any provision of this section shall not invalidate any proceeding under this act if the owner of a property interest or a person to whom a tax deed was issued is accorded the minimum due process required under the state constitution of 1963 and the constitution of the United States.' "), quoting MCL 211.78i(10).  Given the statement in *Sidun* that any remedies are contingent on the plaintiff's constitutional claim and given our holding today, we disavow the Court of Appeals' statement in *Gillie v Genesee Co Treasurer* that "statutory notice rights can be violated, giving rise to an action for money damages, yet minimum due process may have been satisfied."  *Gillie*, 277 Mich App 333, 353 n 10; 745 NW2d 137 (2007), citing *Perfecting Church*, 478 Mich at 10.  And given the foregoing, we disagree with the concurrence's suggestion that a claimant could sustain an action for monetary damages under MCL 211.78*l*(1) by showing that any of the GPTA provisions require actual notice and that the claimant failed to receive such notice.

[42] MCL 211.78(2).

[43] See *Republic Bank*, 471 Mich at 737.  See also *Michigan's New Foreclosure Process*, 29 Mich Real Prop Rev at 59-60 (explaining that in enacting the 1999 amendments of the GPTA, the Legislature "specifically stated that its intent was to require compliance with the minimum requirements of due process for interest holders of tax delinquent property without creating any additional rights that may interfere with the foreclosure process").

all remedies available under the GPTA to monetary damages.[44]  Reading these two provisions together, it is clear that the Legislature, in enacting the 1999 amendments of the GPTA, intended to provide monetary damages under MCL 211.78*l*(1) only to those former property owners who did not receive constitutionally adequate notice.  Although MCL 211.78*l*(1) provided "a damages remedy that [was] not constitutionally required,"[45] a due-process violation for lack of notice still served as necessary predicate for such a claim.[46]

Accordingly, property owners who received constitutionally adequate notice sufficient to satisfy the minimum requirements of due process under the GPTA would have necessarily received notice required under the GPTA and, thus, could not sustain an action for monetary damages under MCL 211.78*l*(1).  In this case, because 2CC has already been adjudicated to have received such notice, 2CC cannot establish that it did not receive any notice required under the GPTA.  Accordingly, the Court of Appeals correctly dismissed 2CC's action for monetary damages under MCL 211.78*l*(1), albeit for the wrong reasons.[47]

---

[44] See *Perfecting Church*, 478 Mich at 8; *Michigan's New Foreclosure Process*, 29 Mich Real Prop Rev at 52.

[45] *Perfecting Church*, 478 Mich at 10.

[46] 2CC argues that this conclusion renders MCL 211.78*l* a dead letter because former property owners deprived of due process will always move to set aside the foreclosure judgment rather than make a claim for monetary damages.  Yet there may be instances in which an event occurs on the property after foreclosure, such as a flood, fire, or unforeseen circumstance, that causes the property's value to decrease.  In that case, a former property owner denied constitutionally adequate notice may wish to cut his or her losses and seek monetary relief.  Thus, returning the property to the former owner is not always a superior remedy to monetary damages as 2CC suggests.

[47] Our holding today implicates principles of res judicata and collateral estoppel.  See *Adair v Michigan*, 470 Mich 105, 121; 680 NW2d 386 (2004) ("The doctrine of res judicata is

18

## IV. CONCLUSION

We affirm the judgment of the Court of Appeals but clarify that the monetary-damages provision of the GPTA provided a remedy available only to former property owners and interest holders who did not receive constitutionally adequate notice sufficient to satisfy the minimum requirements of due process. Because 2CC received such notice, it cannot sustain an action under MCL 211.78*l*(1).

Brian K. Zahra
Bridget M. McCormack
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

---

employed to prevent multiple suits litigating the same cause of action. The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. . . . [The doctrine] bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not."); *Monat v State Farm Ins Co*, 469 Mich 679, 682-685; 677 NW2d 843 (2004) ("Generally, for collateral estoppel to apply three elements must be satisfied: (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel.") (quotation marks, citations, and brackets omitted). As stated earlier, in *In re Cass Co Treasurer*, unpub op at 1, 8-9, the Court of Appeals held that defendant's efforts to notify 2CC of the foreclosure under the GPTA were sufficient to satisfy the minimum requirements of due process. See p 4 & note 7 of this opinion. Therefore, because we conclude that the phrase "any notice" as it was used in MCL 211.78*l*(1) encompassed all constitutionally sufficient notice and that the statute provided relief only if a property holder's due-process rights were violated, defendant was entitled to summary disposition under MCR 2.116(C)(7) (prior judgment).

19

STATE OF MICHIGAN

SUPREME COURT

2 CROOKED CREEK, LLC, and RUSSIAN
FERRO ALLOYS, INC.,

        Plaintiffs-Appellants,

v                                       No. 159856

CASS COUNTY TREASURER,

        Defendant-Appellee.

_____

VIVIANO, J. (*concurring in judgment*).

I concur in the judgment. The only question we must answer in this case is whether plaintiffs, 2 Crooked Creek, LLC, and Russian Ferro Alloys, Inc., are correct that MCL 211.78*l*(1) allowed them to bring a claim for monetary damages if they failed to receive "actual notice."[1] They assert, in essence, that defendant, the Cass County Treasurer, was obligated under this statutory provision to provide them with "actual notice." The majority rejects this argument, concluding that the statute allowed monetary claims only if the plaintiffs failed to receive constitutionally adequate notice. That is, the majority concludes that if the plaintiffs received all the notice our federal and state Constitutions require, they

_____

[1] Amendments of the statute in 2020 removed the "actual notice" language at issue here. See 2020 PA 256. All references in this opinion to MCL 211.78*l*(1) are to the version in effect before the 2020 amendment of the statute.

cannot sue for monetary damages even if they did not receive all the notice the statute required.

While I harbor doubts the majority is correct that the version of the statute applicable to this case permitted monetary-damages claims only when the notice was constitutionally insufficient, I believe it is unnecessary to resolve that question here. Even assuming plaintiffs are correct that MCL 211.78*l*(1) allowed claims to be brought when constitutionally adequate notice has been given, plaintiffs have failed to show that the provision allowed claims whenever taxpayers did not receive "actual notice." This is because MCL 211.78*l*(1) did not establish a separate notice requirement but instead simply incorporated the notice provisions set forth elsewhere in the General Property Tax Act, MCL 211.1 *et seq*. A plaintiff could sue for monetary damages if "he or she did not receive any notice *required under this act . . . .*" MCL 211.78*l*(1) (emphasis added). Thus, to determine whether plaintiffs failed to receive "any notice required under this act," we would need to examine what notice the act required. This would involve determining whether plaintiffs received the notice required under the act's numerous notice provisions. See, e.g., MCL 211.78i(3) (requiring, in certain circumstances, that the occupant be personally served with notice of the foreclosure or verbally informed of it or that notice be placed in a conspicuous manner on the property). If any of these provisions require actual notice and that notice was not received, then the failure to receive actual notice might have satisfied MCL 211.78*l*(1), enabling a monetary-damages claim.[2]

---

[2] For this reason, *In re Wayne Co Treasurer Petition*, 478 Mich 1, 10; 732 NW2d 458 (2007), may have been at least partially correct in suggesting that the failure to receive actual notice could lead to a damages claim. But this question need not be decided in this case because plaintiffs have not raised this argument.

This is not, however, the argument plaintiffs have presented to this Court. Instead of identifying what notice required by the act they did not receive, plaintiffs broadly contend that MCL 211.78*l*(1) imposed a separate "actual notice" requirement. Plaintiffs' failure to address the act's relevant notice provisions means they have fallen short of showing they did not receive "any notice required under this act . . . ." *Id*. Thus, even assuming that MCL 211.78*l*(1) permitted monetary-damages claims for statutory violations that did not amount to constitutional violations, plaintiffs would still lose because they have failed to argue that any of the act's actual-notice provisions were violated. I therefore agree with the majority that plaintiffs cannot invoke MCL 211.78*l*(1), but I would not decide, as the majority does, whether a plaintiff who received constitutionally sufficient notice has thereby received "any notice required under this act" for purposes of MCL 211.78*l*(1). Accordingly, I concur in the judgment.

David F. Viviano

WELCH, J. did not participate in the disposition of this case because the Court considered it before she assumed office.

3